DAVID G. HOUGHTON & others *vs.* ROBERT L. RIZZO &
another, trustees.

Norfolk.    October 8, 1971. — April 21, 1972.

*Real Property*, Equitable restrictions.  *Frauds, Statute of.*  *Equity
Pleading and Practice*, Appeal.

Present: TAURO, C.J., CUTTER, REARDON, QUIRICO, & HENNESSEY, JJ.

Where the owners of a parcel of land consisting of thirty-seven lots,
as shown on a recorded subdivision plan, conveyed sixteen of
the lots by thirteen separate deeds, eleven of which contained
a provision restricting the lots to single family residential use and
where, in a suit by the owners of eight of the conveyed lots,
the plaintiffs sought to enjoin the owners from constructing a
multi-family apartment building on one of the remaining lots, it
was held that, in the absence of any writing signed by the defend-
ants to satisfy the requirements of the statute of frauds, the
plaintiffs had no right to enforce a restriction by implication
with respect to the defendants' remaining land.  [639–644]

BILL IN EQUITY filed in the Superior Court on July 10,
1969.

The suit was heard by *Bennett, J.*

*William B. Tyler* (*Walter G. Van Dorn* with him)  for
the defendants.

*Justin C. Barton* for the plaintiffs.

QUIRICO, J.   This is a bill in equity for the enforcement
of restrictions allegedly applicable to land owned by the
defendants.   The case is before us on the defendants' ap-
peal from a final decree enforcing compliance with the
alleged restrictions.

At the trial in the Superior Court the parties submitted
a written stipulation on some undisputed subsidiary facts
and in addition thereto they presented in evidence a num-
ber of documentary exhibits and the oral testimony of
witnesses.   The judge ordered that the testimony be re-
ported to this court, but for some reason not stated in the
record no transcript of the testimony is before us.   G. L.

c. 214, § 24, as appearing in St. 1947, c. 365, § 1. A very small portion of the transcript relating to an oral stipulation is reproduced in the record. All of the exhibits consisting of the deeds containing the restrictions sought to be enforced, and the subdivision plans to which the deeds refer, have been presented to us pursuant to a certificate and order of the judge under S. J. C. Rule 1:06 (1), 351 Mass. 735.

The parties made no request under G. L. c. 214, § 23, as appearing in St. 1947, c. 365, § 2, that the judge report the material facts found by him. Nevertheless, the judge filed a document entitled, "Findings, Rulings and Order for Decree." We have held that "a report of facts voluntarily made by the trial judge has the same effect as a report of 'the material facts' under the statute." *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 562, and cases cited. However, we were careful to add: "This statement cannot be understood to mean that a voluntary finding of certain facts only which may not amount to a full report of all the facts upon which the decree rests is for all purposes equivalent to the complete report of 'the material facts' contemplated by the statute."

The document filed by the judge in this case states some, but not all, of the subsidiary facts upon which the parties agreed either by their stipulations or by admissions in their pleadings. It includes no finding of any subsidiary fact upon which the parties had not agreed. After reciting certain facts the judge interpreted language in the deeds which are exhibits before us in a manner which entitled the plaintiffs to relief and he ordered the entry of a decree in their favor. On this state of the record, it is open to the defendants to contend, as they do, that on the facts upon which they have agreed, part of which are recited in the judge's findings, rulings and order for decree, and on the documentary exhibits before us, the plaintiffs, as matter of law, are not entitled to enforce the restrictions in question against the defendants. *Birnbaum* v. *Pamoukis*, 301 Mass. 559, 562, and cases cited.

The only issue presented by this case is whether the defendants' conveyance of thirteen lots shown on a subdivision plan by deeds which contained identical restrictions operated similarly to restrict the remaining lots shown on that plan and still owned by the defendants. We review the pertinent facts bearing on that issue. All of the facts are established either by the agreement of the parties or by undisputed documentary evidence.[1]

On April 2, 1965, the defendants caused to be recorded in the appropriate registry of deeds a subdivision plan (plan) dated June 15, 1964, and approved by the planning board of the town of Norwood on March 29, 1965. The plan showed proposed ways and thirty-seven numbered lots, all owned by the defendants. Between that date and the filing of the bill in this suit on July 10, 1969, the defendants conveyed sixteen of the lots by thirteen separate deeds, all of which were duly recorded. Eleven of the deeds contained identical restrictions which provided as follows in so far as pertinent to the issue before us: "Said premises are hereby conveyed subject to the restrictions below set forth, which are hereby imposed on said premises for the exclusive benefit of the Grantors and their successors in trust and of such of their successors in title to the benefitted land, hereinafter described (or to any portion or portions thereof), to whom the exclusive benefit of these restrictions may hereafter be expressly

---

[1] It appears from the limited portion of the transcript printed in the record that at a pre-trial conference counsel for the defendants admitted the following allegation of the plaintiffs' bill: "22. That your Petitioners' lands are still subject to said restrictions *and that the Respondents' land is also still subject thereto*" (emphasis supplied). The plaintiffs rely on the italicized language, and the defendants ask to be relieved of their agreement that the allegation in such language is true. The defendants' admission that their land was subject to restrictions was obviously not intended, and it was inconsistent with the written stipulation of the parties to the effect that "the Petitioners' lands are still subject to restrictions, as set forth in deeds aforementioned." If this inadvertent admission were allowed to stand, there would have been no need for the trial and present appeal. The case was tried to determine whether the defendants' land is subject to any restrictions. Justice requires that the defendants be relieved from the stipulation as applied to their land, and they are relieved therefrom. *Malone* v. *Bianchi,* 318 Mass. 179, 182–183. *Loring* v. *Mercier,* 318 Mass. 599, 601.

granted of record." There then followed among other restrictions provisions restricting the use of the lots to single family residences and requiring approval of construction plans in writing by the grantors or their successors in title. The restrictions concluded: "Any person hereafter claiming under this deed may rely upon any instrument in writing signed by the Grantors or their successors in trust or their successors in title to whom the exclusive benefit of these restrictions may hereafter have been expressly granted of record, or by any agent or agents to whom authority therefor may have been delegated by the Grantors or such successors by instruments duly recorded with Norfolk Registry of Deeds or registered with Norfolk Registry District of the Land Court, purporting to approve any plans or completed construction, or waiving these restrictions in particular respects. The benefitted land above referred to consists of all the land shown on said plan dated June 15, 1964."

The plaintiffs are the present owners of eight of the lots shown on the plan and conveyed by the defendants. Although some are the original grantees from the defendants and others are successors in title to the original grantees, nothing in this decision turns on that difference. The plaintiffs also include the original grantees of two lots which the defendants conveyed without restrictions. On the view which we take of this case, it is unnecessary to consider why the restrictions were omitted from those deeds or the effect of such omissions on the rights of the owners of those lots to obtain relief. All of the restrictions contained in the deeds by which the defendants conveyed the lots now owned by the plaintiffs are still in effect.

There is nothing in the record or in the exhibits placed before this court to indicate that the defendants ever expressly either (a) granted the benefit of any of the restrictions to their successors in title or any other persons, or (b) orally or in writing, by deeds or otherwise, restricted or agreed to restrict their remaining land in any manner, or to subject it to any of the restrictions which

they placed in the deeds by which they conveyed all but two of the lots.

On June 19, 1969, the defendants obtained a building permit from the building inspector of the town of Norwood for the erection of a multi-family apartment building on one of the lots on the plan which they still own, and they started to construct the building. Those developments precipitated the filing of this bill in which the plaintiffs seek a decree ordering the removal of the partially constructed building and declaring that the defendants' lot is subject to the same restrictions as were included in the deeds by which they previously conveyed other lots on the same plan. The judge entered a final decree to that effect and the defendants seasonably appealed.

The plaintiffs do not claim that the defendants ever expressly agreed to subject all of their lots on the plan to these restrictions. They argue instead that it may be inferred from the fact that identical restrictions were imposed on thirteen lots that there was a "common scheme" as a result of which they obtained "an enforceable right to have the remaining land of the common grantor within the limits of the common scheme [viz., the remaining lots on the plan], bound by similar restrictions by way of *implication.*" For this proposition they cite and rely almost entirely on the decision in *Snow* v. *Van Dam,* 291 Mass. 477. This reliance is misplaced.

In *Snow* v. *Van Dam, supra,* at 479, all of the lots of both the plaintiffs and the defendants were subject to restrictions originally imposed by a common grantor. It was not a case in which the owners of lots previously restricted by a grantor were attempting to enforce the same restrictions against other land still owned by that grantor. The principal question involved there was whether the land owned by the defendant grantee was within the scope of the same scheme of restrictions which the common grantor had imposed some years earlier in his conveyances to the plaintiffs or their predecessors in title. *Id.* at 481.

The case before us is governed by the rule first applied in this Commonwealth in *Sprague* v. *Kimball*, 213 Mass. 380, decided in 1913. There the court found that the defendant owned a tract of land which she intended to develop, that she established a general building scheme for that purpose for the entire tract and that she then sold four lots by deeds incorporating restrictions to carry out that scheme and orally represented and agreed with each buyer that she would not sell the fifth and last lot except by a deed imposing the same restrictions. On a bill in equity brought by the purchasers of the four lots to enjoin the developer from conveying the fifth lot without imposing the restrictions on it, this court held they were not entitled to relief. It said (at 382–383) : "The right invoked by the plaintiffs . . . is an equitable easement or servitude passing with a conveyance of the premises to subsequent grantees. . . . It is settled by our decisions, that under . . . [the statute of frauds] an equitable as well as a legal interest in land must be evidenced by some sufficient instrument in writing or it is unenforceable." To the same effect, see *Sargent* v. *Leonardi*, 223 Mass. 556, 558.

In *Snow* v. *Van Dam*, 291 Mass. 477, 482, the court said: "Where such a scheme [of restrictions] exists, it appears to be the law of England and some American jurisdictions that a grantee subject to restrictions acquires by implication an enforceable right to have the remaining land of the vendor, within the limits of the scheme, bound by similar restrictions. . . [citations omitted]. Traces of that idea can be found in our own reports. . . [citations omitted]. But it was settled in this Commonwealth by *Sprague* v. *Kimball*, 213 Mass. 380, that the statute of frauds prevents the enforcement against the vendor, or any purchaser from him of a lot not expressly restricted, of any implied or oral agreement that the vendor's remaining land shall be bound by restrictions similar to those imposed upon lots conveyed. Only where . . . [citations omitted] the vendor binds his remaining land by writing, can reciprocity of restriction between the vendor and the vendee be enforced."

In the recent case of *Frank* v. *Visockas,* 356 Mass. 227, the defendants conveyed five lots by deeds containing substantially similar restrictions which limited the use of the lots to single family dwellings, and they agreed orally with each purchaser that all lots subsequently sold would be made subject to the same restrictions. When the defendants later decided to use their remaining land for a different purpose, this court denied relief to the purchasers of the five lots and in so doing it relied (at 228–229) on much of the same language which is quoted immediately above from the decision in *Snow* v. *Van Dam,* 291 Mass. 477, 482.

The denial of relief in both the *Sprague* and the *Frank* cases, *supra,* was based on the absence of any writing signed by the defendants sufficient to satisfy the requirements of the statute of frauds with respect to interests in land. Not only is there no such writing in the present case, but neither is there any express oral agreement to restrict the remaining land of the defendants such as was held unenforceable in those cases. We are compelled by those two decisions to conclude that the plaintiffs in the present case are not entitled to have the restrictions applicable to their lots enforced against the remaining land of the defendants. For a collection of similar decisions from other jurisdictions, see the annotation in 5 A. L. R. 2d 1316.

We are not required to decide, and we do not decide, whether the fact that the defendants imposed identical restrictions in the deeds conveying thirteen lots on the plan requires the conclusion that they thereby impliedly agreed to impose the same restrictions on all lots on the same plan.[2] Even if there were a common scheme giving rise to such an implication, there would still be no writing signed by the defendants sufficient to satisfy the statute

---

[2] The language of the deeds is such that it can be argued that the restrictions were imposed "for the exclusive benefit of the Grantors" and not as creating a common scheme. This argument may be based in part on the defendants' reservation of the right to approve construction plans, and their reservation of the right to ". . . [waive] these restrictions in particular respects." See *Patrone* v. *Falcone,* 345 Mass. 659.

of frauds. Such a common scheme, if established, would be of significance in proceedings for enforcement of restrictions between owners of different lots claiming through a common grantor who imposed the restrictions, but not as to land which the grantor has not yet sold and which he has not in writing expressly subjected to the restrictions.

In reaching our decision we have been mindful of the existence of substantial support in judicial decisions and in the writings of legal scholars for the view that if a developer conveys enough lots on a subdivision plan by deeds including uniform restrictions which prove the existence of a uniform or common scheme for the development but without expressly agreeing to insert the same restrictions on later conveyances of other lots on the plan, an agreement to do so may nevertheless be implied and enforced in equity notwithstanding the statute of frauds. See, e.g., *McLean* v. *Thurman*, 273 S. W. 2d 825, 829 (Ct. App. Ky.) ; *Sanborn* v. *McLean*, 233 Mich. 227, 229–230; *Indian Village Assn.* v. *Barton*, 312 Mich. 541, 551; *La Fetra* v. *Beveridge*, 124 N. J. Eq. 24, 33; Am. Law of Property, § 9.33; Powell, Real Property, § 679, pp. 209–210; Tiffany, Real Property (3d ed.) §§ 859–869; Restatement: Property, § 524, comment (c) ; Ryckman, Notice and the "Deeds Out" Problem, 64 Mich. L. Rev. 421, 427–428.[3] Reno, The Enforcement of Equitable

----

[3] This article points out (at 428) the various theories which have been relied upon by courts and legal writers as the basis for the enforcement of equitable servitudes. The author says: "[I]t is the opinion of this writer that the almost universal failure to articulate a fundamental rationale for the law of equitable servitudes is not really explainable as a product of judicial sophistication. For every case decided by an enlightened court intent on preserving the flexibility of [equitable servitudes as] a valuable legal tool, there are ten decided on the basis of faulty authority which reach results that are at best dubious." At this point the author says, by footnote: "In Massachusetts, for instance, the traditional reluctance to enforce third-party beneficiary contracts would appear to offer an argument against adoption of the contract theory of enforcement of equitable servitudes, and in favor of the property theory. In *Sprague* v. *Kimball*, 213 Mass. 380, . . . the court appeared to adopt the property theory by holding that the real property sections of the Statute of Frauds are applicable to such agreements, thus rendering unenforceable an oral agreement

Servitudes in Land: Part II, 28 Va. L. Rev. 1067, 1090–1095; comment, 44 B. U. L. Rev. 231, 232–237.

In reaching our decision we have been equally mindful of the fact that the proliferation of implied rights in or servitudes upon real estate, which cannot be readily ascertained by an examination of the records of the appropriate registry of deeds or of the Land Court, will serve only further to erode the integrity and reliability of such records and will be a subversion of the fundamental purpose for which such records are required to be made and maintained. A prospective purchaser of a lot on a plan from a developer who has not previously expressly subjected that lot to any restrictions of record should not be subjected to the nearly impossible burden and risk of deciding at his peril whether, by a series of restrictions imposed on lots previously conveyed, the developer has impliedly restricted his remaining land in the same way. "It is the policy of our law in regard to the recording of deeds, that persons desiring to buy may safely trust the record as to the ownership of land, and as to incumbrances upon it which are created by deed." *McCusker* v. *Goode,* 185 Mass. 607, 611. If the purchasers of lots on the defendants' plan had bargained and paid for the benefit of reciprocal restrictions on the land retained by the defendants, they "would have had the right to demand that the defendant[s] insert in the title deed a stipulation or covenant" to that effect. *Sprague* v. *Kimball,* 213 Mass. 380, 383. This they did not do. We elect not to add another dilemma to the many which are already faced by conveyancers in determining and evaluating title to

by the common grantor to impose certain common restrictions on lots to be conveyed in the future. The court did not discuss the fact that technically the Statute of Frauds is not complied with in many cases of express covenants enforced by the grantor against the grantee, since the writing is often not signed by the party to be charged. Compare *Snow* v. *Van Dam,* 291 Mass. 477 . . . . The unfortunate consequences of not working out the theoretical underpinnings of the law of equitable servitudes are demonstrated by the later case of *Patrone* v. *Falcone,* 345 Mass. 659, . . . where the court inexplicably refused to enforce an express restriction even though the deed stated that 'these restrictions are imposed for the benefit of the other lotowners in the development.' "

real estate as affected by matters not of record.  See
Philbrick, Limits of Record Search and Therefore of
Notice: Part I, 93 U. of Pa. L. Rev. 125, 167, 171–172;
Ryckman, Notice and the "Deeds Out" Problem, 64 Mich.
L. Rev. 421, 427–445.

The plaintiffs attempt for the first time by their brief
to present to us for decision the question whether the
town's zoning by-law permits the use of the defendant's
land for multi-family apartment buildings.  The issue
was not raised by the pleadings.  The facts bearing on it
are not included in any stipulation nor in the judge's vol-
untary findings.  The plaintiffs have attempted to intro-
duce the essential facts on the issue by way of their brief
which gives purported dates of amendments to the zoning
by-law and includes references to a transcript.  We have
already noted that there is no transcript before us.  This
issue is not properly presented in this manner and we do
not pass on it.  *American Discount Corp.* v. *Kaitz*, 348
Mass. 706, 712.

The final decree is reversed, and a new decree is to be
entered dismissing the bill with costs of appeal.

*So ordered.*