POPPONESSET BEACH ASSOCIATION, INC. vs. C. THOMAS
MARCHILLO & another.[1]

No. 94-P-5.

Barnstable. November 2, 1995. - January 3, 1996.

Present: BROWN, KASS, & PORADA, JJ.

*Real Property*, Restrictions, Registered land, Certificate of title, Encum-
brance. *Contract*, Implied contract, Unjust enrichment.

Ample evidence supported the conclusions of a Superior Court judge that
    no express covenant or reservation in the chains of title of two parcels
    of property in a planned area encumbered the owners with an obliga-
    tion to pay dues and assessments to a nonprofit beach association that
    maintained roads, a beach and a community building for the area [587-
    588]; further, nothing else in the certificate of title put the owners on
    notice of any such encumbrance running with the land, nor were they
    chargeable with actual notice by reason of observable signs or mainte-
    nance activities [588-590].
Where no restriction appeared in the root deed from which lots in a
    planned area were conveyed out and only one deed in 573 lots in the
    community contained the restriction in question, no claim to enforce
    the restriction could be based on a theory of a common scheme of de-
    velopment. [590-591]
No obligation for contribution to a nonprofit beach association on the part
    of the owner of a parcel that was benefited by the association's activi-
    ties arose from a contract implied in fact, where such an unwritten
    covenant, of indefinite duration, would violate the Statute of Frauds.
    [592-593]
No remedy based on a claim of unjust enrichment was available to a non-
    profit beach association seeking payment from the owners of properties
    benefitted by the association's construction and maintenance of roads,
    where there was a suitable remedy at law under the provisions of G. L.
    c. 84, §§ 12 & 14, for the assessment of the costs of such work. [593]

CIVIL ACTION commenced in the Superior Court Depart-
ment on March 14, 1990.

---

[1]James Candito. As to a third defendant named in the complaint, the
action was resolved before trial and is not before us on appeal.

The case was heard by *Gerald F. O'Neill, Jr.,* J.

*Jeremy M. Carter* for the plaintiff.

*Wesley A. Morris* for James Candito.

KASS, J. No express covenant or reservation appears in the chain of title of the defendants that imposes an obligation to contribute to a planned area association. Popponesset Beach Association, Inc. ("the Association"), provides services, including the maintenance of roads, a beach, and a community building, as well as social programs such as a Fourth of July Field Day, movies, Irish Night, and a fashion show.[2] For those services, the Association levies dues and special assessments that·the defendants, who are property owners in the Association's service area, have declined to pay on the ground that their registered land titles do not bind them so to do, nor does any contract.

The Association brought an action to recover past and future dues and assessments allocable to the defendants' premises based on four theories: (1) a title-based claim; (2) a claim based on a common scheme; (3) a claim based on implied contract in fact; and (4) a claim based on unjust enrichment. A judge of the Superior Court determined that, on the evidence, there was no title-based obligation, that the defendants could not be made involuntary members of the Association, and that they were not liable for its charges, except such as they might be bound to pay for road maintenance under G. L. c. 84, §§ 12 and 14. From a judgment so stating, the Association has appealed. We affirm.

1. *Title-based claim.* Popponesset Beach is in Mashpee. The Association purports to represent 510 property owners (including the defendants) who own lots[3] carved out of land described in a certificate of title dated February 26, 1942. The lots owned by both defendants, Candito and Marchillo,[4]

---

[2]Some of those events add to the revenues of the association.

[3]The evidence was that there are 573 lots in the Popponesset community area. Some persons own more than one lot.

[4]Although James Candito and C. Thomas Marchillo are the named defendants, each of them took title with his respective spouse, as tenants by the entirety. Neither Barbara P. Candito nor Annabel Marchillo was made a party to this action.

stem from that root. Candito's lot was first conveyed out of the root title on May 5, 1947, and Marchillo's land was first conveyed as a separate lot on April 12, 1948. As to each lot there were intervening conveyances before Candito acquired his lot on April 29, 1977, and Marchillo acquired his on July 8, 1968.

Absent from those transfer certificates of title is any express reference to rights reserved by an association to impose charges for common expenses. That absence is unremarkable because Popponesset Beach Association, Inc., a nonprofit corporation organized under G. L. c. 180, did not come into being until August 1, 1953. Indeed, the earliest evidence in the record of an intention to reserve rights in favor of the Association appears in a deed by Popponesset Corporation to a lot owner in 1960. Such restrictions as are called to attention in the Candito and Marchillo transfer certificates of title by reference to registered documents do not concern obligations to the Association but are about building restrictions and the reservation of certain property for "general development." There is, thus, ample evidence to support the conclusion of the trial judge that nothing in the chains of title leading to the Candito and Marchillo ownerships charged them with notice that their properties were subject to restrictions or reservations of the type claimed by the Association. See *Sargent* v. *Leonardi*, 223 Mass. 556, 558 (1916). Contrast *Guillette* v. *Daly Dry Wall, Inc.*, 367 Mass. 355, 359 (1975).

Title to registered land is free of encumbrances that are not noted on the certificate of title, either by express grant or reservation or by express reference to a registered document that contains the grant or reservation. G. L. c. 185, § 46. *Jackson* v. *Knott*, 418 Mass. 704, 710 (1994). Contrast *Myers* v. *Salin*, 13 Mass. App. Ct. 127, 137 (1982). To that general rule there are two exceptions, on which the Association fastens in its attempt to burden the defendants' land: (1) an encumbrance may bind an owner if what the certificate of title recites in the way of prior documents, plans, restrictions, rights, and reservations would prompt a reasonable purchaser to investigate further the referenced documents, *Jackson* v.

*Knott*, 418 Mass. at 711, or (2) the purchaser has actual knowledge of the encumbrance. *Ibid.*

As to the first exception, we have already observed that the particular documents to which the defendants' respective certificates of title refer do not stimulate a hunt for obligations imposed by the Association. But, the Association urges, had the defendants gone back to their respective root titles and worked them forward, including the 573 lots that came out of the root parcel, they would have found so many lots encumbered with an obligation to pay dues and assessments to the Association that they would have seen a pattern of obligation. They would have understood that pattern applied to them as owners in the same subdivision. That, however, would require a burden of collateral investigation of title inconsistent with the underlying assumption of the land registration system, that the public may rely on what the certificate contains and expressly refers to as a source of restriction, right, or obligation. *McCusker* v. *Goode*, 185 Mass. 607, 611 (1904). *Houghton* v. *Rizzo*, 361 Mass. 635, 643 (1972).[5] Contrast *Labounty* v. *Vickers*, 352 Mass. 337, 344 (1967); *Guillette* v. *Daly Dry Wall, Inc.*, 367 Mass. at 359.

We come to the second exception to the general rule. If the land registration records did not place Candito and Marchillo on notice of the Association's claims, then, the Association argues, what had occurred on the ground in the way of maintenance of the roads, community building, and beach, as well as signs announcing, "Popponesset/A Private Community" and "Popponesset Beach/Private," surely must have made the defendants aware that a community association existed. The Association would have it follow ineluctably that the defendants were thereby put on notice that they were obliged to support the Association. It may be that the defendants should have concluded that a beach association

---

[5] The *McCusker* case did not involve registered land, and the *Houghton* case involved partially unregistered land. The policy that the public may rely on land records is even more powerful as to registered land. See *Kozdras* v. *Land/Vest Properties, Inc.*, 382 Mass. 34, 43-45 (1980).

existed, but for all they knew it was a voluntary association, and, if they chose not to participate in communal activities, they were free not to join. As to the roads, the defendants might be subject, as the trial judge determined, to assessment under G. L. c. 84, §§ 12 and 14.[6] It would require more than ordinary imagination to conclude that participation with and contribution to a beach association were obligations that ran with the land. The factual context is different from that described in *Killam* v. *March*, 316 Mass. 646, 647 (1944) (purchaser acquired registered title with knowledge of a lease of a driveway and garage), in *Wild* v. *Constantini*, 415 Mass. 663, 664-665 (1993) (right of way known to owner of burdened property), and in *Feldman* v. *Souza*, 27 Mass. App. Ct. 1142, 1143 (1989) (purchaser acquired registered title with knowledge of right of way). In those cases, the physical encumbrances were obvious, and there was evidence in each case that the burdened owners had actual notice of the encumbrances.

2. *Claim based on common scheme.* Closely related to the title-based claim — indeed, a variant of it — is the Association's claim to contribution based on a common scheme of development. In its fullest expression in some jurisdictions, the idea of a common scheme of development is that, if certain uniform encumbrances are inserted in the titles of the preponderance of lots in a subdivision, lots in the subdivision that do not carry the encumbrance in writing in their chains of title will nevertheless be so burdened. See the discussion of out-of-State authorities in *Houghton* v. *Rizzo*, 361 Mass. at 642-643. Massachusetts decisions take the more limited view that the common scheme burden arises only when a seller of land binds that vendor's remaining land with restrictions by means of a writing. Posit, for example, that after imposition of such an encumbrance, the vendor sells a series of lots shown on a recorded plan subject to those same restrictions

---

[6]Section 12 of G. L. c. 84 authorizes the proprietors of a private way to repair ways and to assess occupants of the ways their respective proportions for maintenance expenses.

and sells some lots[7] without making them subject to those restrictions. On such facts any owner of an encumbered lot may impose the restriction on a lot acquired without the expressed restriction. *Snow* v. *Van Dam*, 291 Mass. 477, 482-484 (1935). *Houghton* v. *Rizzo*, 361 Mass. at 640-641.[8] The decisive differentiating factor in the Massachusetts common scheme principle is that the restriction is written in a root deed from which both lots subject to an express encumbrance and lots not subject to an express encumbrance flow.

Against this background, the Association is unable to impose on the defendants' properties the claimed right to collect dues and assessments based on a common scheme. First, the restriction does not appear in the root deed or certificate of title. Second, in the record before us, there is only one deed that contains the express restriction out of 573 lots in the Popponesset community; one deed does not make a common scheme. There is good reason not to divine rights and servitudes that "cannot be readily ascertained by an examination of the records of the appropriate registry of deeds or of the Land Court" lest the integrity and reliability of those records suffer erosion. *Houghton* v. *Rizzo*, 361 Mass. at 643-644.[9]

---

[7]The conveyance of a lot without express encumbrances may occur before or after the conveyance of lots with express encumbrances. See *Snow* v. *Van Dam*, 291 Mass. at 484.

[8]A contemporary articulation of the common scheme idea, or general plan doctrine, appears in Restatement (Third) of Property (Servitudes) § 2.14 (Tentative Draft No. 1, 1989), which provides as follows: "A conveyance by a developer that imposes a servitude on the land conveyed to implement a general plan creates an implied reciprocal servitude burdening all the developer's remaining land included in the general plan, if injustice can be avoided only by implying the reciprocal servitude." The rationale and history of the doctrine are traced in comments a and b.

[9]There is also a doctrinal weakness in the case for an encumbrance on the defendants' lots by reason of a common scheme. A restriction on land must both benefit and be appurtenant to the land seeking enforcement of the restriction. See *Snow* v. *Van Dam*, 361 Mass. at 480-481. The burden the Association desires to impose on the defendants' land does not burden its own land, which consists of certain common property (e.g., beach and a community building). In light of our resolution of the common scheme issue, we need not decide whether the Association may represent the interests of members whose lots do have the burden of supporting the Association engrafted on their titles.

3. *Claim based on contract implied in fact.* An implied-in-fact contract comes into being when, notwithstanding the absence of a written agreement or verbal agreement expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract. *LiDonni* v. *Hart*, 355 Mass. 580, 583 (1969) (by their conduct, principals in a closely held corporation gave the plaintiff, a landscape contractor, to understand that they would personally pay for the plaintiff's services). Restatement (Second) of Contracts § 4 comment a, & illus. 1 & 2 (1981). Otherwise expressed, if a person knowingly receives services and other benefits, and there is no evidence that those services and benefits were being furnished gratuitously, the law implies a promise to pay the value of those services and benefits. *Evers* v. *Gilfoil*, 247 Mass. 219, 223 (1924). *Anisgard* v. *Bray*, 11 Mass. App. Ct. 726, 729-730 (1981).

There is surface appeal to the Association's argument that, if Candito and Marchillo so much as opened their eyes, they must have known they were receiving road and beach maintenance, lifeguard services, as well as the other community services previously described. Residents of the Popponesset community received newsletters from the Association. There was no evidence, however, that the defendants had chosen to avail themselves of the recreational facilities and services of the Association. As to the road system, the defendants had not by any conduct invited its construction — it was in place when they acquired their lots — and maintenance. Indeed, they could not have prevented that work. Providing an amenity or service that benefits the land of another, in the absence of invitation therefor, does not compel the owner of the benefited land to pay for it. *LaChance* v. *Rigoli*, 325 Mass. 425, 427 (1950).

There are more fundamental reasons for rejecting the proposition that an obligation of indefinite duration may be imposed on land through the theory of implied-in-fact contract. We have already voiced our reluctance to burden land with obligations not apparent from land or deed registry records. In addition, a covenant of indefinite duration imposed on the

basis of off-record and unwritten facts violates the Statute of Frauds. G. L. c. 259, § 1. See also Restatement (Second) of Contracts § 130 (1979). The Association calls to our attention *Seaview Assn. of Fire Island, N.Y., Inc.* v. *Williams*, 69 N.Y.2d 987, 989 (1987), which decided that a purchase of residential property within the area of a community homeowners' association with knowledge of the association and the benefits it provides manifests acceptance of an obligation to pay for the facilities and services offered. For the reasons we have stated, we decline to follow the *Seaview* case.

4. *Claim based on unjust enrichment.* Even if the defendants have not expressly requested road construction and maintenance, that benefit is essential to the enjoyment of their properties, and the Association rightly resists giving the defendants a free ride. The Association, however, has, as indicated, a suitable remedy at law, namely the provisions of G. L. c. 84, §§ 12 and 14, and there is no occasion to invoke equitable remedies. As to the recreational benefits, the defendants may lawfully decline to accept them, however unfriendly, uncommunal, uncooperative, or ungenerous that stance may be. The judgment rightly leaves open an assessment for road work under G. L. c. 84, §§ 12 and 14. The parties may wish to consider a voluntary arrangement for payment by the defendants of their aliquot share of the cost of road work.

*Judgment affirmed.*