Travers, J.
INTRODUCTION
On November 7, 1997, the parties appeared before this Court for a hearing on Defendants’ Motion for Summary Judgment. In support of the motion, the Defendants, Sundance Publishing (Sundance) and Frederic S. Johnson (Johnson) claim that there was no express or implied employment contract, and the Plaintiff was terminated for cause. Lastly, the Defendants argue that the implied covenant of good faith and fair dealing was breached when the Plaintiff was terminated.
The Plaintiff, Gare Thompson (Thompson) opposed the motion, alleging numerous genuine issues of material fact in dispute. For the following reasons, the Defendants’ motion is allowed in part and denied in part.
BACKGROUND
The undisputed facts, as gathered from the summary judgment record, are as follows. Beginning in 1993, Thompson was an employee of Sundance. At first Thompson was hired by Sundance to act as a consultant. His full-time employment with Sundance was the result of numerous meetings and discussions between himself and Johnson. At these meetings, Sundance’s goal of earning $25 million in sales within five years was presented to Thompson. Thompson’s role in reaching that goal was discussed. An employment agreement was reached, and Johnson delivered to Thompson a letter denoting the terms of employment.
The letter set forth Thompson’s salary and compensation plans, as well as Thompson’s ability to earn up to 1.5% equity interest in the business. The first 0.5% of the equity investment would vest after the first 12 months of employment on February 1, 1995. Thompson was subject to an annual review to determine salary changes. In addition, the letter indicates that Thompson will terminate his then-current employment and relocate with his family to the Boston area. Prior to his employment with Sundance, Thompson was residing and working in New York.
In accordance with the terms of the letter, Thompson began working as a full time employee on February 1, 1994. Thompson was the head of the production department, and reported only to Johnson. He had other teams which he managed, including an editorial team, and an art and production team.
In late December 1994, Johnson met with Thompson. The purpose of this meeting was to terminate Thompson’s current position with Sundance as the director of publishing. At that time, Johnson informed Thompson that he was being terminated for economic reasons, but perhaps an alternate arrangement could be worked out, such as remaining a consultant to Sundance. At that meeting, Johnson did not set forth any other reasons for Thompson’s termination, although Johnson alleges that Thompson’s performance was poor in many areas.
Thompson’s employment with Sundance ended officially in January 1995, less than one month before his first equity interest in Sundance would have vested. The parties have stipulated that the only damages Thompson is seeking to recover from this action is his 0.5% equity interest in Sundance. Thompson filed this action for breach of contract (express and implied) and breach of the covenant of good faith and fair dealing on February 3, 1995.
DISCUSSION
I. Summary Judgment Standard
Summary judgment will be granted where there are no genuine issues of material fact and where the record presented entitles the moving party to judgment as a matter of law. See Cassesso v. Comm'r of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c) (1997). The moving party bears “the burden of demonstrating that there is no genuine issue of material fact on every relevant issue." Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). “[A] party moving for summary judgment in a case in which the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in rule 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case.” Kourouvacilis *173 v. General Motors Corp., 410 Mass. 706, 716 (1991). Once the moving party “establishes the absence of a triable issue, the parly opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact.” Pederson, 404 Mass. at 17.
II. The Plaintiffs Complaint
Thompson alleges in his Complaint that the Defendants breached an express or implied contract for employment and breached the duty of good faith and fair dealing. To decide the present motion, the Court must first determine whether a contract for employment existed, and if so, was it express or implied.
A. Was there an Express or Implied Contract of Employment?
Whether the Defendants violated an express or implied contract when they terminated Thompson depends upon whether Thompson was an employee under contract or an employee at will. Thompson and the Defendants point to the employment letter to support their arguments.
Thompson alleges that the terms of the letter which set forth the five-year equity participation schedule is sufficient to demonstrate that a definite term of employment for five years was intended by the parties. In support, Thompson cites numerous conversations during which Johnson expressed to other individuals Sundance’s intention to employ Thompson for five years.
The Defendants, on the other hand, point to the noticeable absence of any specific language tending to demonstrate that a term of five years was intended by the parties. The Defendants bolster their argument by the deposition testimony of Thompson himself in which he claims that he was aware that Sundance could terminate his employment. The Defendants point to Thompson’s opinion that the notion that his employment could be terminated by either party if they were dissatisfied was “an assumption that you go into with any job," and Thompson assumed that risk with his position at Sundance.
The Employment Letter
Contract interpretation is a question of law, left to the sound discretion of the court. See, Lexington Ins. Co. v. All Regions Chemical Labs, Inc., 419 Mass. 712, 713 (1995), citing Allstate Ins. Co. v. Bearce, 412 Mass. 442, 446-47 (1992). Thus, whether the letter of employment was sufficient to create an employment under contract is a question of law for this Court.
The contract’s essential terms must be “sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained. [Citation omitted.] However, a contract is not to be held unenforceable ‘if, when applied to the transaction and construed in the light of the attending circumstances,’ the meaning can be ascertained with reasonable certainty.” Simons v. American Dry Ginger Ale Co., 335 Mass. 521, 523 (1957), quoting Cygan v. Megathlin, 326 Mass. 732, 734 (1951). See also Hastings Assoc. Inc. v. Local 369 Bldg. Fund, Inc., 42 Mass.App.Ct. 162, 170, review denied 424 Mass. 1108 (1997) (relying on same language).
Thompson requests that the Court view the reference to the equity participation as establishing a five-year employment contract. In addition, Thompson asks this Court to view the instances where Johnson referred to Thompson as an employee with a five year commitment to Sundance as support for his argument. The terms of the letter of employment are not vague or unascertainable. The letter sets forth a compensation plan and salary commitment. The letter does not, however, rise to the level of establishing a five-year written employment contract. With reference to a five-year term, the letter is noticeably barren of such a commitment by Sundance, and even appears to be intentionally open-ended. Because the Court does not view the equity participation as sufficient to raise an issue of ambiguity in the letter, the parol evidence rule prevents introduction of prior statements made by Johnson regarding any long-term employment commitment of Sundance to contradict the plain language of the letter. See Affiliated FM Ins. Co. v. Constitution Reinsurance Corp., 416 Mass. 839, 842 (1994) (where the contract terms are ambiguous, evidence regarding prior negotiations is admissible to explain or elucidate the terms of the contract; however, such evidence is not admissible to contradict the terms of the contract). Contrast, Kravetz v. Merchanges Distributors, Inc., 387 Mass. 457, 460-61 (1982) (court found an implied contract for definite term, where writing referred to salary, additional compensation, and a non-competition period of five years).
Reliance on the use of the word “salary” to import a five-year contract is misplaced. Although the word “salary” may infer that the term of employment was for a definite period or permanent duration, see Mahoney v. Hildreth & Rogers Co., 332 Mass. 496, 499 (1955), the term as used in Thompson’s employment letter contained the provisio that Thompson was subject to an annual review. This detracts from any implication that the term “salary” refers to a definite term of employment for five years.
The conclusion that the letter does not rise to the level of an employment contract for five years is supported by Thompson’s own deposition testimony that he was aware and assumed that either party could terminate the employment relationship if that person was dissatisfied. Thompson’s testimony does not comport with the argument that the letter established a definite term of employment under a contract, as personal dissatisfaction alone is not a justification for termination of a contract. See Rooney v. Weeks, 290 Mass. 18, 17 (1935) (absent a term of personal satisfaction, unless a reasonable person would be dissatisfied with the work performance, the promisor cannot seek to discharge the contract if he was only personally dissatisfied).
*174 For the foregoing reasons, the letter of employment signed by Johnson as president of Sundance was a letter outlining the terms of Thompson’s salary and compensation and not a contract for a term of employment for five years. Likewise, the employment relationship does not give rise to an implied-in-fact contract. “An implied-in-fact contract comes into being when, notwithstanding the absence of a written agreement or verbal agreement expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract.” Popponesset Beach Ass’n v. Marchillo, 39 Mass. App. Ct. 586, 592,review denied 422 Mass. 1104 (1996), citing LiDonni v. Hart, 355 Mass. 580, 583 (1969).
In the present case, there is a written agreement memorializing the terms of the employment relationship insofar as salary and compensation. The circumstances surrounding the employment relationship, i.e. conversations with third parties, do not give rise to an implied-in-fact contract for employment. The employment relationship was one of an at-will nature, and the summary judgment record does not support the recharacterization of the relationship as something other than an at-will employment.
Finally, the absence of a writing setting forth the essential terms of the employment agreement, specifically the length of employment, violates the statute of frauds. See G.L.c. 259, §1 (1996), see also Irving v. Goodimate Co., 320 Mass. 454, 458-59 (1946). The letter is not a contract of employment for any specific length of time, and as such, Thompson was an employee at will. Employees at will are terminable with or without cause. See Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988); Fortune v. National Cash Register Co., 373 Mass. 96, 100 (1977). Because Thompson was an employee at will, his termination was not subject to a demonstration of cause or justification.
B. Was the Implied Covenant of Good Faith and Fair Dealing Breached?
Thompson argues that even if the employment was at-will, his termination was a breach of the covenant of good faith and fair dealing. This covenant seeks to prevent employers from firing employees in bad faith. See Fortune, 373 Mass. at 104. If the employee’s termination is a necessary business decision, the covenant is not breached. See id.
In Fortune v. National Cash Register Co., supra, the Supreme Judicial Court agreed with the plaintiffs contention that even if he was an employee at will at the time of his termination, he was “entitled to a jury determination on NCR’s motives in terminating his services under the [written salesman’s] contract and finally discharging him.” Id. at 101. The salesman’s contract set forth the plaintiffs salary and compensation or bonus payments. See id. at 97-98. The plaintiff, after twenty-five years of service with NCR, was terminated and did not receive the bonuses he was due on a prior sale of machines to a large client. See id. at 99-100. The plaintiff argued that his termination was an effort to avoid paying the plaintiff his commissions, and therefore done in breach of the implied covenant of good faith and fair dealing. See id.
Balancing the employer’s need to control the work force and make legitimate business decisions with the employer’s duty to exercise good faith in each of its decisions, the Court concluded that firing the plaintiff to avoid paying the plaintiffs commissions was a breach of the implied covenant of good faith and fair dealing. See id. at 105. “Courts have often applied this rule to prevent overreaching by employers and the forfeiture by employees of benefits almost earned by the rendering of substantial services.” Id.
Although the plaintiff in the Fortune case had already earned his commission at the time of his termination, this is insufficient to allow summary judgment for the Defendants. To determine whether the implied covenant of good faith and fair dealing was breached, the Fortune case requires the Court to examine the motivation of Sundance and Johnson in their decision to terminate Thompson. If done in bad faith or through malice, the covenant is breached.
Thompson was not be eligible to earn his equity participation until February 1, 1995. Because he was terminated in January 1995, he was prevented from obtaining his interest in Sundance. Thompson alleges that the impetus for firing him one month before his interest in Sundance vested was the Defendants’ unwillingness to allow him to hold that equity interest. In support of his contention, Thompson points to Johnson’s memoranda to himself and deposition testimony, indicating that Johnson had in mind a replacement for Thompson as early as November 1994. In addition, Johnson indicated that Thompson was being terminated solely for economic reasons. By his own admission, Johnson did not explain to Thompson that he was being terminated for poor work performance.
The allegations set forth by Thompson are sufficient to survive the motion for summary judgment. Thompson places in dispute the true motivations of Johnson and Sundance in terminating him as director of publishing. See Kourouvacilis, 410 Mass. at 716; Pederson, 404 Mass. at 17. As the Court in Fortune decided, so this Court decides that Thompson is entitled to a jury determination as to whether the Defendants’ actions were in bad faith.
ORDER
For the foregoing reasons, it is hereby ORDERED that the Defendants’ Motion for Summary Judgment is ALLOWED as to the allegations of breach of an express or implied contract.
It is further ORDERED that the Defendants’ Motion for Summary Judgment is DENIED as to the allegation that the Defendants breached the implied covenant of good faith and fair dealing.