Lowy, David A., J.
The plaintiff, Vicar Corporation (“Vicar”), brought this declaratory action against the defendant, Concurrent Computer Corporation (“Concurrent”), to determine the terms of the sale of power converters. Concurrent presently moves to dismiss the action, or in the alternative, stay the litigation and compel arbitration. For the reasons set forth below, Concurrent’s motion to dismiss the action and compel arbitration is ALLOWED.
BACKGROUND
Vicor is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business in Andover, Massachusetts. Vicor designs, manufactures, and sells modular power components and complete power systems including power converters. Concurrent is a corporation organized and existing under the laws of the state of Delaware, with a principal place of business in Ft. Lauderdale, Florida. Concurrent sells digital on-demand systems and real-time computer systems. Between 2000 and June 2004, Vicar sold power converters to Concurrent for use in computer system control boards. Typically, Concurrent would initiate the transaction by issuing a purchase order. Vicar would reply by shipping the power converters along with Vicor’s Terms and Conditions.[1] Subsequent to the shipment, Concurrent would tender payment.
Concurrent’s purchase order always contained the following: “Concurrent Computer Corporation Terms and Conditions of Purchase apply to this Purchase Order . .. [t]he Terms and Conditions can be found at http://www.ccur.com/info.poterms.htmL'' This website contained, inter alia, the following terms:
3. ALTERATION OF TERMS AND CONDITIONS
No revision by SELLER to any term or condition of this Purchase Order shall be binding on BUYER unless accepted in writing by the authorized representative of BUYER. Any articles or services supplied by SELLER under BUYER’S Purchase Order constitutes an acceptance by SELLER of all the terms and conditions herein, unless otherwise modified in writing by BUYER and SELLER. No charges in excess of the purchase price shall be allowed unless BUYER has so authorized in writing. No change orders or other alterations, modifications or additions to the Purchase Order, or waiver of any of the provisions herein, shall bind BUYER unless made in writing and executed by BUYER.
5. DISPUTES
SELLER shall notify BUYER of any actual or potential disputes which may delay the timely performance of this Purchase Order. Disputes not disposed of by negotiation shall be determined by appropriate legal proceedings and the rules of the American Arbitration Association (“AAA”) governed by the United States Arbitration Act. SELLER shall at all times continue performance on this Purchase Order while a dispute is being resolved unless otherwise notified in writing by the BUYER.
Vicor’s Terms and Conditions were silent with respect to dispute resolution. Vicor’s Terms and Conditions, however, stated, “(t]he order described on the face of this acknowledgment shall be deemed to be entire and Buyer’s acceptance of any portion thereof shall constitute acceptance of the complete order on the terms and conditions set forth.”
*718 In 2002, Concurrent received complaints from'its customers regarding the failure of its products. Concurrent determined that the failures were caused by defective power converters purchased from Vicor. Concurrent immediately notifed Vicor of the defects. Vicor responded by offering Concurrent a 25% discount on new products.
On or about August 1, 2005, Concurrent made a written demand to Vicor for the replacement costs and lost profits that Concurrent incurred as a result of the defective products. After a failed negotiation, Vicor filed an action for declaratoiy judgment on August 18, 2005. Concurrent filed a Demand for Arbitration with the American Arbitration Association (“AAA”) in Florida on September 22, 2005. On November 17, 2005, Vicor filed an emergency motion for temporaiy stay of the arbitration. The Court ordered a stay of the arbitration pending further order of the court.
Here, Concurrent argues that as the offeror, the terms of its Purchase Order are controlling, and as such, the dispute between the parties is appropriate for arbitration. Vicor asserts that its Terms and Conditions constituted a counteroffer that was accepted by Concurrent when it accepted and paid for the power converters.
DISCUSSION
Concurrent has moved to dismiss Vicor’s complaint or stay the proceedings pursuant to the Federal Arbitration Act (“FAA”), 9 U.S.C. §1 et seq. (1988). The FAA provides that “a dispute is arbitrable if it falls within the scope of a written arbitration agreement that is otherwise valid and enforceable.” Carpenter v. Pomerantz, 36 Mass.App.Ct. 627, 628 (1994); 9 U.S.C. §2. The FAA “create[s] a body of federal substantive law of arbitrabiliiy, applicable to any arbitration agreement within the coverage of the Act.” Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). The FAA governs the arbitrability of disputes in state or federal court. Carpenter, 36 Mass.App.Ct. at 628 n.3 (citing Moses H. Cone Mem’l Hosp., 460 U.S. at 24). Section 3 of the FAA provides that when claims are properly referable to arbitration, the court, upon application of one of the parties, shall stay the trial of the action until arbitration is complete. 9 U.S.C. §3.
In order to determine whether arbitration is appropriate in this case, the Court must determine (I) the scope of Concurrent’s arbitration clause, and (II) whether or not the terms of the contract between the parties include the arbitration clause.
I. Scope of Concurrent’s Arbitration Clause
Vicor argues that the present dispute is outside the scope of the arbitration clause in Concurrent’s purchase order. Vicor claims that only those disputes “which delay the timely performance of this Purchase Order” are subject to arbitration. Concurrent asserts that any and all disputes arising from the contract, which are not resolved through negotiation, shall be resolved through arbitration.
“If there are no questions as to the validity of the arbitration agreement itself, a court asked to compel arbitration must determine whether the arbitration agreement in fact covers the dispute in question.” Sentinel Products Corp. v. Scriptoria, N.V., 124 F.Sup.2d 115, 117 (2000) (quoting Bercovitch v. Baldwin Sch,, Inc., 133 F.3d 141, 148 (1st Cir. 1998)). “In construing the scope of an arbitration agreement, ‘questions of arbitrability must be addressed with a healthy regard for federal policy favoring arbitration.’ ” Id. (citations omitted). “Any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability.” PaineWebber, Inc. v. Elahi, 87 F.3d 589, 593 (1st Cir. 1996). Although the doctrine contra proferentem[2] is relevant to the construction of the agreement, this doctrine “is one of last resort in Massachusetts and is especially tenuous ‘when the parties are sophisticated businesses.’ ” Sentinel Products Corp., 124 F.Sup.2d at 117 (quoting Principal Mutual Life Ins. Co. v. Racal-Datacom, Inc., 233 F.3d 1, 4 (1st Cir. 2000)).
“The ‘primary purpose’ of the [FAA] is to ensure ‘that private agreements to arbitrate are enforced according to their terms.’ ” Paine Webber, Inc., 87 F.3d at 593 (quoting Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Jr. Univ., 489 U.S. 468, 479 (1989)). “Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit.” Id. “Thus, whether an issue is to be decided by the arbitrator is a matter of the parties’ contractual intent.” Id. (citing Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 57 (1995)).
State law principles of contract interpretation should be applied to an arbitration agreement, “but with ‘due regard’ to the federal policy favoring arbitration.” Id. (quoting Mastrobuono, 514 U.S. at 63-64 & n.9). It is a fundamental principle of contract interpretation that a written contract is to be interpreted as a whole. Murray v. Edes Mfg. Co., 309 Mass. 395, 401 (1941). Every word in the contract should be given force so far as practicable. Winchell v. Plywood Corp., 324 Mass. 171, 181 (1949).
Here, the arbitration clause appears under the heading “DISPUTES.” The first sentence of this section states: “SELLER shall notify BUYER of any actual or potential disputes which may delay the timely performance of this Purchase Order.” The second sentence states: “Disputes not disposed of by negotiation shall be determined by appropriate legal proceedings and the rules of the [AAA] governed by the United States Arbitration Act.”
*719 Vicor asserts that the first sentence limits the scope of the second sentence. The Court does not agree with this assertion. Generally, “a modifying clause is confined to the last antecedent unless there is something in the subject matter or dominant purpose which requires a different interpretation.” Commonwealth v. Brown, 391 Mass. 157, 160 (1982). Here, in the second sentence, the term “disputes” is modified by the subsequent clause “not disposed of by negotiation.” The third and final sentence of the section deals with the continuation of performance during “a dispute.” The dominant purpose of the section as a whole appears to be the behavior of the parties during disputes, in general, as opposed to one specific type of dispute. The current dispute is therefore within the scope of arbitration agreement.
II. Terms and Conditions of the Sale
In order to determine whether the arbitration clause is a term of the agreement, the Court must consider a typical “battle of the forms” sale in which a buyer and a seller each attempt to consummate a commercial transaction through the exchange of self-serving preprinted forms that clash, on both material and minor terms. See Commerce & Indus. Ins. v. Bayer Corp., 433 Mass. 388, 391 (2001). As noted above, Concurrent’s purchase order contains an arbitration provision, and Vicor’s acknowledgment does not. Each side essentially asserts that its form is the “offer” and that the terms and conditions printed on its form are controlling.
Section 2-207 of the Uniform Commercial Code, and the Massachusetts adoption thereof, G.L.c. 106, §2-207, was enacted to create a mechanism to resolve this type of contractual dispute that would have otherwise resulted in an unenforceable contract under the “mirror image” rule. See Commerce & Indus. Ins., 433 Mass. at 391 n.6 (citing JOM, Inc. v. Adell Plastics, Inc., 193 F.3d 47, 53 (IstCir. 1999)). The text of §2-207 is as follows:
(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms . . .
(2) The additional or different terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3)Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.
G.L.c. 106, §2-207.
Under §2-207, a contract may be formed in three ways. JOM, Inc., 193 F.3d at 53. “First, if the parties exchange forms with divergent terms, yet the seller’s invoice does not state that its acceptance is made ‘expressly conditional’ on the buyer’s assent to any additional or different terms in the invoice, a contract is formed [under subsection (1) of §2-207].” Id. “Second, if the seller does make its acceptance ‘expressly conditional’ on the buyer’s assent to any additional or divergent terms in the seller’s invoice, the invoice is merely a counteroffer, and a contract is formed [under subsection (1) of §2-207] only when the buyer expresses its affirmative acceptance of the seller’s counteroffer.” Id. Third, “where for any reason the exchange of forms does not result in contract formation (e.g., the buyer ‘expressly limits acceptance to the terms of [its offer]’ under §2-207(2)(a), or the buyer does not accept the seller’s counteroffer under the second clause of §2-207[l]), a contract nonetheless is formed [under subsection (3) of §2-207] if their subsequent conduct— for instance, the seller ships and buyer accepts the goods — demonstrates that the parties believed that a binding agreement had been formed.” Id. at 54.
It is Vicor’s position that the language of their acknowledgment form renders it a counteroffer. Vicor’s acknowledgment, however, cannot be considered an acceptance “expressly conditional” on the buyer’s assent to any additional or different terms. See JOM, Inc., 193 F.3d at 53 (“seller’s invoice must place the buyer on unambiguous notice that the invoice is a mere counteroffer”); Dorton v. Collins & Aikman Corp., 453 F.2d 1161, 1168 (6th Cir. 1972) (“[expressly conditioned] acceptance clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror’s assent to the additional or different terms therein”); J.J. White & R.S. Summers, Uniform Commercial Code §1-3, at 39 (5th ed. 2000) (“language [that ‘expressly conditions’ acceptance] is not easily invoked”). An acceptance “predicated on the offeror’s assent must be ‘directly and distinctly stated or expressed rather than implied or left to inference.’ ” Dorton, 453 F.2d at 1168 (quoting Webster’s Third International Dictionary).
Furthermore, a buyer’s mere acceptance of a delivery should not be considered an assent to additional or different terms. Id. (“buyer’s retention of the acknowledgment for ten days without objection . . . could never have been recognized as the buyer’s assent to the additional or different terms where accep *720 tance is expressly conditional on that assent”). Vicor’s acknowledgment merely states that “(t]he order described on the face of this acknowledgment shall be deemed to be entire and Buyer’s acceptance of any portion thereof shall constitute acceptance of the complete order on the terms and conditions set forth.” Such language is not predicated on Concurrent’s “directly and distinctly stated or expressed” assent. Id.; see also Commerce & Indus. Ins., 433 Mass. at 390-91 (holding that seller’s acceptance was expressly conditioned where acknowledgment form stated “(t]his document is not an Expression of Acceptance or a Confirmation document as contemplated in Section 2-207 of the Uniform Commercial Code . . . [t]he acceptance of any order entered by [buyer] is expressly conditioned on [buyer’s] assent to any additional or conflicting terms contained herein”).
In the absence of an “expressly conditional” acceptance, a contract was formed between the parties pursuant to subsection (1) of §2-207. See JOM, Inc., 193 F.3d at 53. Since Vicor is deemed to have accepted the offer contained in Concurrent’s purchase order, the terms of Vicor’s acknowledgment must be construed as proposals for addition to the contract. See G.L.c. 106, §2-207(2). Vicor’s acknowledgment, however, is silent with respect to the arbitration of disputes between the parties. Where an offer contains a condition, such as an arbitration clause, and the acceptance is silent with respect to said condition, it is not necessary to further apply §2-207(2). Polyclad Laminates v. VITS Maschinenbau, 749 F.Sup. 342, 346 (D.N.H. 1990) (arbitration clause “was a term contained in the offer, not a material alteration to the original agreement”); J.J. White & R.S. Summers, Uniform Commercial Code §1-3, at 36 (“terms contained in buyer-offeror’s document which are not contradicted by the acceptance become part of the contract”). Since the terms of Concurrent’s purchase order are the terms of the contract, the present dispute is appropriate for arbitration.
III. Motion to Dismiss
Section 3 of the FAA provides that when claims are properly referable to arbitration, a court, upon application of one of the parties, shall stay the trial of the action until arbitration is complete. 9 U.S.C. §3. However, courts have held that this rule was not intended to limit dismissal of a case in the proper circumstances. Alford v. Dean Witter Reynolds, Inc., 975 F.2d 1161, 1164 (5th Cir. 1992); Snarling v. Hoffman Const. Co., Inc., 864 F.2d 635, 638 (9th Cir. 1988). Since Concurrent’s purchase order requires that all the disputes “not disposed by negotiation” must be submitted to arbitration, there is no reason for this Court to retain jurisdiction and stay the action. Sea-Land Service, Inc. v. Sea-Land of Puerto Rico, Inc., 636 F.Sup. 750, 757 (D.C. Puerto Rico 1986). “Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a Judicial review of the arbitrator’s award in the limited manner prescribed by law.” Alford, 975 F.2d at 1164; 9 U.S.C. §9-12. Therefore, since there are “no live controversies before this Court, the appropriate procedure is dismissal of the action, without prejudice.” Sea-Land Service, Inc., 636 F.Sup. at 757 (citing Moses H. Cone Mem’l Hosp., 460 U.S. at 13).
ORDER
It is therefore ORDERED that defendant’s motion to dismiss the action and compel arbitration is' ALLOWED.

 For the purposes of this motion, Concurrent does not dispute whether Vicor’s Terms and Conditions were included with every shipment of power converters.

 Contra proferentem, i.e. “against the person,” is the doctrine that in interpreting documents, ambiguities are to be construed unfavorably to the drafter.