Wilson, Paul D., J.
INTRODUCTION
This lawsuit is a dispute about insurance coverage. Plaintiff Saint Consulting Group, Inc. contends that defendant Twin Ci1y Fire Insurance Company, referred to in this decision by its business name, “Hartford,” wrongfully denied its claim for liability coverage based on another lawsuit brought against Saint in Illinois. Hartford maintains that Saint did not provide adequate notice of its claim as required by its policy, and that the Illinois lawsuit falls within a policy exclusion that applies to liability in any way related to Saint providing professional services to customers or clients.
Before me is Hartford’s Motion to Dismiss. For the reasons that follow, I will allow that motion.
BACKGROUND
The following facts are taken from the allegations of the First Amended Complaint, which I treat as true for the purposes of this motion only, and from documents attached to or referenced in it, along with matters of public record of which judicial notice is appropriate. Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). Saint is a consulting firm that provides advocacy services for clients involved in zoning and land use disputes. Saint’s methods of advocacy include organizing petition drives, phone banks, websites, media, writing campaigns, protests, and paid advertisements. Saint also advises its clients on administrative, regulatory, and judicial matters related to land use disputes.
On April 24, 2010, a directors, officers, and entity liability insurance policy (“the policy”) went into effect that covered Saint. Hartford was the insurer under the policy. Saint obtained the policy through defendants Robert Danahy and Eastern Insurance Group, LLC, who were acting on behalf of Hartford as its agents.
The policy’s liability coverage generally applied to claims “first made against [an] Insured Entity during the policy period ... for a Wrongful Act by. .. Insured Persons.” Opposition to Motion to Dismiss, Ex. A, Private Choice Encore!! Policy, at C16. The policy provided not only liability coverage, but also defense costs associated with covered claims. Id. at C8.
However, that coverage was subject to an exclusion for claims “based upon, arising from, or in any way related to the rendering of, or failure to render, any professional services for others, including, without limitation, services performed by the insureds for or on behalf of a customer or client.” Id. at C19. The policy also could have included optional coverage for miscellaneous professional liability, but Saint did not purchase that optional coverage.
The policy included a requirement that “[n]otice of a claim must be given to the insurer as soon as practicable after a notice manager becomes aware of such claim . . .” Id. at Cl, C5. The policy provided the “Address For Notices To Insurer . . . For Claims other than Kidnap and Ransom/Extortion: The Hartford Claims Department Hartford Financial Products 2 Park Ave., 5th Floor New York, New York 10016.”
At some point prior to June 2010, Supervalu, Inc. hired Saint to provide assistance in opposing property developments involving Wal-Mart.[2] On June 23,2010, Rubloff Development Group, Inc. and affiliated entities sued Saint in the United States District Court for the Northern District of Illinois. Rubloff alleged that Saint was involved in a racketeering enterprise with Supervalu to illegally obstruct the development of retail shopping centers containing Wal-Mart stores, including development projects involving Rubloff. See Opposition to Motion to Dismiss, Ex. B, Rubloff Second Am. Compl., at ¶18. Rubloff asserted that the goal of the enterprise was to further SuperValu’s anti-competitive purposes through deceptive and unlawful methods. Id. at ¶¶22, 26. These methods included bringing frivolous lawsuits to delay construction projects, opposing regulatoiy, administrative and zoning approvals with meritless arguments, and unspecified political pressure and “dirty tricks.” Id., ¶¶40-41, 54, 57-58.
Rubloff asserted claims against Saint under 18 U.S.C. §1962(c) and 15 U.S.C. §1, under an Illinois statute, and for tortious interference with prospective economic advantage, fraud, abuse of process, and conspiracy. Rubloff also brought claims seeking declaratory and injunctive relief related to certain documents that Saint had characterized as proprietary trade secrets, which Rubloff had obtained from a former Saint employee.[3] Rubloff sought a declaration that those documents were not trade secrets, and an injunction preventing Saint from destroying any further documents that might be relevant to the issues in the Illinois lawsuit.
“The conduct of which Rubloff . . . complained in the Illinois [lawsuit] included precisely the type of land use, administrative, regulatory, zoning, media communications, and public information consulting work which is Saint’s core business . . .” Saint First Am. Compl. ¶54. Saint’s First Amended Complaint in this litigation repeatedly describes the basis of the Illinois lawsuit as its “core business activities.” Id. at ¶¶54, 56.
On July 1,2010, Saint notified Danahy and Eastern Insurance of the Illinois lawsuit by forwarding copies of the complaint and first amended complaint to them. Danahy and Eastern Insurance forwarded those documents to Saint’s comprehensive general liability in *10 surer, which was not Hartford.[4] Eight months later, on March 2, 2011, Danahy and Eastern Insurance sent what the parties refer to as an “Acord form” to Hartford, in connection with the Illinois lawsuit.[5] On April 1, 2011, Hartford responded by letter to Danahy, acknowledging receipt of the Acord form, but stating that it could not accept it as a claim or notice of a potential claim. Hartford stated that it required more details regarding the nature of the Illinois lawsuit, such as particulars describing the persons and entities involved, and acts committed that were likely to give rise to a claim. Hartford required copies of any complaints, demand letters, and other correspondence related to the Illinois lawsuit. On April 7, 2011, Danahy provided a copy of this Hartford letter to Saint. The briefs are not clear as to whether Saint, Danahy, or Eastern Insurance ever provided the additional information that Hartford requested.
To date, Hartford has refused to provide coverage for the Illinois lawsuit. Hartford claims that Saint failed to provide notice of its claim in a manner consistent with the requirements of the policy, and that the professional services exclusion in the policy applies to any claim arising out of the Illinois lawsuit.
DISCUSSION
1.Standard
“While a complaint attacked by a motion to dismiss does not need detailed factual allegations ... a plaintiffs obligation to provide the ‘grounds’ of his ‘entitle[ment] to relief requires more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true.” Iannacchina, 451 Mass. at 636, quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007).
2.Notice
The policy required that Saint provide notice of any claim as soon as practicable after becoming aware of such a claim. The parties devote significant time and effort to disputing whether Saint’s forwarding the Illinois complaint and amended complaint to Danahy and Eastern Insurance constituted “notice” to Hartford as called for by the policy.
Saint contends that because Danahy and Eastern Insurance worked as Hartford’s agents, notice to them was equivalent to notice to Hartford for the purposes of the policy. However, the language of the policy was specific in requiring that notice be sent to Hartford’s claims department in New York. This court is obligated to “construe the entire [policy] without rendering any of its language superfluous.” Allmerica Fin. Corp. v. Certain Underwriters at Lloyd’s London, 81 Mass.App.Ct. 674, 678 (2012). To conclude thatnotice sent to Danahy and Eastern Insurance was sufficient would impermissibly render the provision requiring that notice be sent to Hartford’s claims department superfluous.
Saint also suggests that because Hartford was not prejudiced by the notice to Danahy and Eastern Insurance, any noncompliance with the notice requirement of the policy was not a material breach excusing Hartford’s failure to provide coverage. However, “the purpose of [the policy’s] notice provision is to produce ‘fairness in rate setting’ by minimizing ‘the time between the insured event and the payment. . .’ No further determination of prejudice to the insurer need be made.” Tenovsky v. Alliance Syndicate, Inc., 424 Mass. 678, 681 (1997), quoting Chas T. Main, Inc. v. Fireman’s Fund Ins. Co., 406 Mass. 862, 864 (1990).
Because Saint’s notice to Danahy and Eastern Insurance was not sufficient, Hartford did not receive notice of the Illinois lawsuit as soon as practicable. Hartford itself did not receive notice of the Illinois lawsuit until Danahy and Eastern Insurance sent the Acord form on March 2, 2011, eight months after Saint learned of the Illinois lawsuit. Saint could have practicably sent notice to Hartford sooner, as illustrated by Danahy and Eastern Insurance sending notice to Saint’s other insurer seven months earlier in July 2010. For this reason, Saint failed to comply with the notice requirement of the policy, and Hartford is not required to provide coverage.
3.Policy exclusion
In addition, the policy exclusion for liability in any way related to Saint’s professional services for customers and clients applies to Saint’s claim. As a threshold matter, Saint suggests that the policy, including the professional services exclusion, should be construed narrowly in favor of coverage. See Charles Dowd Box Co., Inc. v. Fireman’s Fund Ins. Co., 351 Mass. 113, 119-20 (1966). However, “the doctrine of contra proferentem ... is one of last resort in Massachusetts and is especially tenuous where the parties are sophisticated businesses.” Vicor v. Concurrent Computer Corp., No. 05-1374 (Essex Super.Ct. Mar. 6, 2006) [20 Mass. L. Rptr. 717], quoting Sentinel Prods. Corp. v. Scriptoria, N.V., 124 F.Sup.2d 115, 117 (D.Mass. 2000).[6] Furthermore, after review of the professional services exclusion, I conclude that there is no ambiguity to construe in favor of Saint.
Saint’s own allegations in this litigation make clear that the basis of the Illinois lawsuit was alleged conduct by Saint in carrying out what Saint calls its “core business”; that is, its professional services. Saints says that its core business activities include land use consulting work provided on behalf of customers and clients, like the kind Saint allegedly performed for Supervalu. Saint’s allegations to this effect are binding in this litigation, and Saint may not now be heard to inconsistently argue that the Illinois lawsuit was not based on its professional consulting services for its clients. See G.L.c. 231, §87.
*11 Saint further argues that the Illinois lawsuit is based on allegedly unlawful anticompetitive activities, and SuperValu did not hire Saint to violate the antitrust laws. As a result, Saint suggests, to the extent the Illinois lawsuit is based on unlawful activity, it is not based on Saint’s professional services. This argument begs the question; Saint defines “professional services” in a way that could never apply to any lawsuit alleging wrongdoing by Saint. All lawsuits are predicated on allegations of unlawful activity which, according to Saint’s definition, could never be professional services. This construction of the professional services exclusion would narrow it to the point of insignificance. I cannot interpret the policy in such a manner. See Starr v. Fordham, 420 Mass. 178, 192 (1995), and authorities cited.
The cases on which Saint relies to support its position are veiy different. In those cases, sexual misconduct, with clients was deemed to be outside the scope of a similarly-worded insurance policy exclusion for professional services. “It is self-evident that professional services . . . did not call for sexual contact between [the professional] and [the client].” Roe v. Fed. Ins. Co., 412 Mass. 43, 49-50 (1992). See also McNulty v. Assur. Co. of Am., Memorandum and Order Pursuant to Rule 1:28, 81 Mass.App.Ct. 1121, 2012 WL 874735, at *3 (Mar. 16, 2012) (same). Unlike the sexual misconduct cases cited in Saint’s brief, the Illinois lawsuit was based entirely on actions that Saint allegedly took in the course of providing professional services to its client SuperValu. Indeed, the litigation that Saint fomented (meritless, as alleged in the Illinois complaint, or not) and the political opposition to the Rubloff/Wal-Mart land development projects that Saint helped to lead, described in the second amended complaint in the Illinois lawsuit, were exactly the sort of professional services Saint offers to clients.
Saint’s remaining argument that some of the claims advanced in the Illinois lawsuit were not based on its professional services to SuperValu fares no better. Saint emphasizes Rubloffs claims seeking both a declaration that certain documents it acquired from a former Saint employee were not protected trade secrets, and an injunction preventing Saint from destroying other documents relevant to the issues in the Illinois lawsuit.
It is true that, on their face, those two claims are not directly based on Saint’s professional services. However, the scope of the professional services exclusion is broader than Saint suggests. By its very language, the exclusion in the policy at issue applies to any claim arising from, or in any way related to, the rendering of professional services. This sort of language in insurance policies “must be read expansively, incorporating a greater range of causation than that encompassed by proximate 'cause under tort law.” Bagley v. Monticello Ins. Co., 430 Mass. 454, 457 (1999), and cases cited. Typically, this sort of language “in insurance exclusionary provisions suggests] a causation more analogous to a ‘but for’ causation, in which the court examining the exclusion inquires whether there would have been ... a basis for [Rubloffs] suit, in the absence of [Saint’s professional services].” Id.
Construing the professional services exclusion in the manner above, I conclude that, but for Saint’s professional services, there would not have been any claims against it in the Illinois lawsuit, including those seeking declaratoiy and injunctive relief. Without Saint’s professional services on behalf of SuperValu, there would have been no documents for Rubloff to obtain, and no issues in the Illinois lawsuit that supported Rubloffs claim for an injunction to preserve relevant documentary evidence.
To the extent Saint contends that this construction of the professional services exclusion deprives the policy of any value, its argument is without merit. The professional services exclusion would not apply to any director, officer, or entity liability arising from the internal management of Saint’s affairs, or its compliance with corporate reporting requirements, if applicable.[7]
CONCLUSION AND ORDER
For the foregoing reasons, Twin City Fire Insurance Company’s Motion to Dismiss is, in all respects, ALLOWED.

SuperValu, Inc. is a large grocery store chain and a competitor of Wal-Mart.

While not described in detail in Rubloffs Second Amended Complaint, these documents apparently describe “the dirty tricks campaign secretly orchestrated by SuperValu and [Saint].” Rubloff Second Am. Compl. at ¶60.

That insurer denied coverage. Saint sued, and the United States District Court for the District of Massachusetts ruled in favor of the insurer. The United States Court of Appeals for the First Circuit affirmed.

Although not explained in the papers, the term “Acord form” seems to refer to the Association for Cooperative Operations Research and Development, an entity responsible for creating standardized forms for the insurance industry.

“Contra proferentem,” loosely translated as “against the offeror,” is the name of the principle of contract interpretation on which Saint relies in suggesting that the professional services exclusion should be construed narrowly in favor of coverage.

If more were needed, Saint’s reasoning works more persuasively in reverse: If the policy Saint purchased covered liability related to its professional services, then there would be no reason for Hartford to offer separate coverage for “miscellaneous professional services,” which Saint had the option to buy, but did not.