Miller, Rosalind H., J.
This dispute between plaintiff, Saint Consulting Group, Inc. (“Saint”), and its liability insurers, Twin City Fire Insurance Company d/b/a The Hartford (“Hartford”) and Eastern Insurance Group, LLC (“Eastern”) and its agent Robert Danahy (“Danahy”), stems from the insurer’s refusal to defend Saint in a lawsuit (“the Rubloff action”) filed in Illinois.
In its complaint, Saint brought claims for breach of written contract against Eastern and Hartford (Count I), breach of oral contract against Eastern and Danahy (Count II), breach of implied-in-fact contract against Eastern and Danahy (Count III), breach of contract by estoppel against Eastern and Danahy (Count IV), breach of the covenant of good faith and fair dealing against Eastern, Danahy and Hartford (Count V), negligence against Eastern and Danahy (Count VI), negligence against Hartford (Count VII), negligent misrepresentation against Eastern and Danahy (Count VIII), negligent misrepresentation against Hartford (Count IX), breach of fiduciary duty against Eastern and Danahy (Count X), violation of Chapter 93A against Eastern, Danahy and Hartford (Count XI), and unjust enrichment against Eastern, Danahy and Hartford (Count XII).[1] This matter is now before the court on the Defendants’ Eastern and Danahy’s Motion for Summary Judgment under Mass.R.Civ.P. 56(c).
For the following reasons, the Defendants’ Eastern and Danahy’s Motion is ALLOWED in part and DENIED in part.
BACKGROUND
The following facts are taken from the joint appendix and the statement of undisputed facts filed jointly by the parties under Superior Court Rule 9A(b)(5) or, if disputed in accordance with that rule, reflect the facts in the light most favorable to Saint.
Saint is a land-use consulting firm specializing in land-use politics and advocating for its clients in zoning and land-use disputes. In the 1990s, Saint began conducting “turf defense” for its clients. Big box store clients hired Saint to protect their “business interests from unwanted competition.” (CSMF ¶3-4.)
Prior to 2008, Saint’s insurance broker was USI. USI brokered an errors and omissions policy (“E&O”) for Saint with the Chubb Group of Insurance Companies (“Chubb E&O”) which was due to expire on November 1, 2008.[2] The Chubb E&O policy contained “Exclusion (A)(13),” applicable to antitrust claims.
Saint also had a directors and officers (“D&O”) policy issued by Twin City Fire Insurance Co. d/b/a The Hartford (“Hartford D&O”). That policy was in effect from June 30, 2008 to April 24, 2009. The policy provided not only liability coverage, but also defense costs associated with covered claims. However, that coverage was subject to an exclusion for alleged violations of the antitrust laws. The policy provided Employment Practices Liability Coverage (“EPLI”), but also had a FLSA (Fair Labor Standards Act) exclusion. On July 10, 2008, USI sent Saint the Hartford D&O policy, with a cover letter, advising Saint to read the policy carefully and inform USI if any changes or corrections were necessary. (CSMF Ex. J.)
Jeffrey Gould, Saint’s general counsel since 2005, received a B.A. from Holy Cross College, cum laude, in 1977 and a J.D. from Suffolk University Law School, cum laude in 1989. (CSMF Ex. F.) Gould practiced law from 1992 to 1996 and tried numerous cases involving complex business disputes. During that time, Gould had the occasion to evaluate insurance policies to determine whether those policies provided coverage for the people that he was suing and to make arguments to insurers regarding coverage. (CSMF Ex. G, p.166.) In 1996, Gould formed his own law firm and tried state and federal court cases involving contract disputes. (CSMF Ex. F.)
Gould claims to have “significant experience as an attorney dealing with contractual matters,” negotiating and drafting contracts, leading the defense and prosecution of lawsuits, and reviewing compliance with all federal and state corporate related laws. (CSMF Ex. G, p.81; Ex. F.) At Saint, Gould reviewed all contracts to which Saint was a party, including its insurance policies. (CSMF Ex. H, p.16.)
Paul Salvucci (“Salvucci”), Saint’s CFO since 2008, earned his MBA from Babson College in 1981 and is a CPA. (CSMF ¶9.) After college, Salvucci worked as a senior financial analyst, but in the 1980s became a corporate controller with duties including the evaluation of his employer’s corporate insurance proposals, presentations and bids. (CSMFUO.) In 2002, Salvucci became CFO at Wilmark Group, where he managed all of the accounting, tax, audit, banking, IT, business insurance as well as employee insurances and benefits. At Wilmark Salvucci was involved with professional liability insurance, workers’ compensation insurance, property insurance and general liability insurance. (CSMF Ex. E, p. 24-25.) Salvucci and his *601 partner acted as risk managers at Wilmark. (CSMF Ex. E., p. 26.)
Eastern Insurance is one of the largest insurance brokers in Massachusetts. Robert Danahy, a licensed Insurance Producer and a licensed Insurance Advisor, who is an agent for Eastern, knew Salvucci, Saint’s CFO, through prior employment. (CSMF Ex. HH, pp. 64-67.)
In 2008, Danahy contacted Salvucci and proposed that they meet to discuss Saint’s insurance needs. Salvucci responded to Danahy and noted that Saint had “no appetite” to switch agents to Eastern from USI, absent a clear reason to do so, but invited Danahy to “review our Professional Liability policy and make your recommendations on how this can be improved upon.” (CSMF Ex. K.)
In September 2008, Danahy met with Salvucci and Gould. During this meeting, Danahy and Gould discussed the business and professional services Saint provides to its clients. Gould explained the constitutional underpinnings of Saint’s efforts to protect its clients “market share” from “unwanted competition.” Gould claims that Danahy asked if Saint’s professional services were illegal or violated anti-trust laws. (CSMF Ex. H, p. 29.) Gould assured Danahy that Saint was not breaking the anti-trust laws due to the constitutional legal doctrine known as “Noerr-Pen-nington.” Id. at p. 29. Gould told Danahy that Saint had never been involved in, nor accused of being involved in, antitrust activities. However, Gould claims that he expressed concern to Danahy about frivolous antitrust litigation. Id. atpp. 31-34.
Danahy told Salvucci and Gould that he had been in the insurance business since the 1970s and had a great deal of experience. Danahy tried to convince Saint that he and Eastern had the background and experience to give them advice about insurance. Dan-ahy told them that he and Eastern wanted to handle all of Saint’s insurance needs, and that he wanted to do an “outstanding job on the D&O, Employment Practice Liability and Fiduciary coverages.”
Danahy advised Saint that he and Eastern would review Saint’s existing E&O and D&O policies. Danahy pointed out a number of deficiencies in Saint’s existing E&O policy. On October 27, 2008, Danahy sent Salvucci a copy of a “Policy Comparison Chart” (the “Chart”) which had been prepared by S.H. Smith, a specialty lines wholesale broker that Eastern was using to obtain a professional liabilily policy for Saint. The Chart compared and contrasted, among other things, the exclusions in Saint’s existing Chubb E&O policy through USI, with those in the Endurance E&O policy which Eastern was marketing to Saint. The Chart stated that there was no coverage for anti-trust claims under either policy. (CSMF Ex. H, p. 46.) Danahy’s accompanying cover letter to Salvucci suggested that he obtain Gould’s input since much of the Chart involved “legal” issues. (CSMF Ex. EE at 37.) Salvucci collaborated with Gould throughout the process of purchasing Saint’s E&O insurance policy through Eastern. Gould noted that the Chart was so understandable that “a layperson could follow along.”
On October 29, 2008, Danahy met with Gould and Salvucci to review the Chart. Salvucci later testified that he and Gould asked Danahy questions in order to understand the differences between the two policies and that Danahy provided a “very good analysis” of the two policies. Gould later testified that, upon reading the Chart, he understood that it stated: (a) both E&O policies included antitrust exclusions; (b) there was no antitrust coverage in the Endurance E&O policy; and (c) nothing in the Chart suggested the Endurance E&O policy included coverage for defense costs for the excluded antitrust claims. Despite that, Gould “assumed” that the Endurance E&O policy provided a defense for alleged antitrust violations. (CSMF Ex. H, pp. 38-39.) Gould also “believed” that Danahy said that in the event Saint was sued for allegations of antitrust violations Saint would have coverage. (CSMF Ex. HH, p. 37.) Gould believed that Danahy agreed, either explicitly or implicitly, that he was going to select insurance that covered defense costs in the event of litigation. (CSMF Ex. HH, p. 37.)
On October 31, 2008, Salvucci signed Endurance’s E&O Application. (CSMF Ex. M.) On February 10, 2009, Danahy mailed a copy of the Endurance E&O policy to Salvucci. The front page of the Endurance E&O policy states, “This is a Claims Made and Reported Policy. Please Read It Carefully" (CSMF Ex. O.) (Emphasis in original.) Section III, Exclusion (N) of the policy provides that the policy shall not apply to “any Claim based upon or arising out of any actual or alleged price-fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti-Trust Act, the Clayton Act, or any similar provision of any state, federal or local statutory law or common law anywhere in the world.” Id.
Gould read only the declarations page and skimmed other portions of the Endurance E&O policy. Gould does not remember reading the antitrust exclusion. (CSMF Ex. H, p.16.) Salvucci reviewed only parts of the Policy’s declaration page, but not the policy terms, conditions or exclusions. (CSMF Ex. E, pp. 128, 141.)
The Endurance E&O policy renewed for the period from November 1, 2009 through November 1, 2010. The renewal policy contained the identical instruction to “PLEASE READ THE POLICY CAREFULLY’ and Exclusion N, which excluded claims for actual or alleged antitrust violations. (CSMF Ex. P). The new renewal policy noted “TERMS THAT APPEAR IN BOLD FACE TYPE . . . HAVE SPECIAL MEANING.” (CSMF Ex. P.) Although Gould skimmed the policy, including the cover pages, the declaration pages, the deductible and the premium, neither Gould nor Salvucci read the entire renewal policy before they were sued for antitrust violations. Gould believes that Danahy advised Saint that the Endurance E&O policy provided cover *602 age for alleged antitrust violations, either explicitly or implicitly. (CSMF Ex. EE, p. 37.)
On April 23, 2009, Danahy sent Salvucci an email and an “Insurance Summary” which included options for Saint’s purchase of D&O and other coverage, which Salvucci reviewed. Danahy told Saint he was going to set up a competition between insurers so Saint could get the best possible rates and the best possible coverage. The Insurance Summary states, in pertinent part, that it was intended to highlight certain policy coverage and exclusions; it was not abinder of insurance or complete policy; and any policy would supersede the document. The Insurance Summary explicitly described “Management Liability Policy Option #1" as an Endurance D&O policy which provided coverage for ’’defense expenses for FLSA." The Hartford D&O policy described as “Management Liability Policy Option #2" (Saints existing D&O coverage, procured by USI), included no such coverage. Danahy and Eastern did not provide Saint with the checklist prepared by S.H. Smith, which highlighted the key provisions and features of the proposed Endurance D&O policy. The checklist was designed to be helpful for a broker like Eastern to explain potential coverage to its clients. Saint renewed the Hartford D&O policy, which did not have coverage for FLSA claims.
On or about July 23, 2010, within the renewed term of the Endurance E&O Policy, Rubloff Development Group, Inc. and others (collectively, “Rubloff’) filed a complaint against Saint and one of Saint’s clients, SuperValu, Inc. (“SuperValu”) in the U.S. District Court for the Northern District of Illinois. The plaintiffs in the Rubloff action were real estate developers who held options to purchase and develop parcels of land in Illinois and entered into agreements with Wal-Mart and other national retail chain stores to develop, sell and or lease portions of these shopping center developments once completed. Saint, representing SuperValu, was successful in defeating both development projects.
Rubloff alleged that Saint was involved in a racketeering enterprise with SuperValu to illegally obstruct the development of retail shopping centers containing Wal-Mart stores, including development projects involving Rubloff. Rubloff asserted that the goal of the enterprise was to further SuperValu’s anticompetitive purposes through deceptive and unlawful methods.
On July 1, 2010, Saint forwarded a copy of the Complaint in the Illinois action to Danahy and Eastern and requested defense and indemnification. Danahy forwarded the Complaint to Endurance for coverage under the E&O policy, but did not send it to Hartford under the D&O policy. (CSMF Ex. GG, pp. 130-32.) However, Endurance, invoking Exclusion N, refused to defend Saint in the Rubloff action. (The same sequence occurred in July 2011, after the Rubloff plaintiffs filed a Second Amended Complaint.)
Gould then sent a letter to Endurance’s legal counsel, arguing that the exclusions upon which Endurance relied did not apply. (CSMF Ex. R.) Thereafter, Saint retained legal counsel and sent a demand letter under chapter 93A, which Endurance refused, citing Exclusion N in the policy.
Then in October 2010, several former Saint employees sued Saint for alleged FLSA violations. Hartford declined coverage under the D&O policy on the basis of policy exclusions, including Exclusion (1) of Part III(B) concerning FLSA claims.
On March 2, 2011, Danahy submitted the Rubloff claim to Hartford. On April 1, 2011, Hartford advised Danahy that it was unable to determine, based on the information provided, what wrongful acts were alleged against Saint in the Rubloff action and requested more specific information documentation. On April 7, 2011, and again on April 26, 2011, Danahy forwarded Hartford’s April 1,2011 letter to Salvucci via email and stated that “Hartford declined on meager information . . . Please share with Jeff [Gould].” (CSMF Ex. U.) On April 27, 2011, Danahy met with Gould, Salvucci and their attorneys. Soon thereafter, Gould’s office sent Hartford the additional material the insurer had requested on the Rubloff claim.
On June 7, 2011, Saint sued Endurance seeking a declaration that Endurance owed Saint a defense. The case was originally docketed in the Suffolk Superior Court, but was removed to the U.S. District Court.
Meanwhile, Saint moved to dismiss the Rubloff action in Illinois on the grounds that the encouragement of public opposition to the development before the local Illinois governing body was legally protected by the First Amendment. On March 27, 2012, the U.S. District Court in Illinois dismissed all claims against Saint on the grounds that the Noerr-Pennington doctrine provided protection for almost all of Saint’s alleged antitrust activities.
On March 30, 2012, the U.S. District Court in Massachusetts ruled that the Endurance E&O policy did not provide coverage for the Rubloff action.
DISCUSSION
Summary judgment shall be granted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56(c); Brigade Leveraged Capital Structures Fund Ltd. v. Pimco Income Strategy Fund, 466 Mass. 368, 373 (2013).
To meet its burden of proof, the moving party must support its motion with at least one of the materials listed in Rule 56(c). Kourouvacilis v. General Motors Corp., 410 Mass. 706, 714 (1991), citing Celotex Corp. v. Catrett, 477 U.S. 317, 328 (1986) (White, J., concurring). “[A]lthough that supporting material need not negate, that is, disprove, an essential element of the claim the party on whom the burden of proof at trial rests, it will demonstrate that proof of that element at trial is unlikely to be forthcoming.” Id.
Once the moving parly meets its burden, the non-moving party must provide specific facts to show that *603 there is a genuine issue for trial. Id. at 716. Unsupported contradictions of factual allegations are insufficient to raise questions of material fact sufficient to defeat a summary judgment motion. Madsen v. Erwin, 395 Mass. 715, 719 (1985).
The court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits when making its decision. Cataldo Ambulance Serv. v. Chelsea, 426 Mass. 383, 388 (1998). However, it does not weigh the evidence, determine witness credibility, or make its own findings of fact. Attorney Gen. v. Bailey, 386 Mass. 367, 370-71 (1987).
I. Breach of Contract (Written): Eastern (Count I)
Saint alleges that Eastern breached their written contract to defend and indemnify in the event of a lawsuit and by failing to give timely notice of the claim to Hartford. To establish a breach of contract, the plaintiff must demonstrate that there was a valid contract, that the defendants failed to perform the terms of the agreement without legal excuse, and that the defendant’s breach caused the plaintiffs damage. The basic rule regarding an insurer’s dufy to defend under a contract of liabilify insurance is set forth in Sterilite Corp. v. Continental Cas. Co., 17 Mass.App.Ct. 316, 318 (1983). The Appeals Court said there:
. . . [T]he question of the initial dufy of a liabilify insurer to defend third-party actions against the insured is decided by matching the third-party complaint with the policy provisions: if the allegations of the complaint are “reasonably susceptible” of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense . . . [T]he process is one of envisaging what kind of losses may be proved as lying within the range of the allegations of the complaint, and then seeing whether any such loss fits the expectation of protective insurance reasonably generated by the terms of the policy.
(Citations omitted.) See HDH Corp. v. Atlantic Charter Ins. Co., 425 Mass. 433, 436 (1997); SCA Serv. Ins. v. Transportation Ins. Co., 419 Mass. 528, 531-32 (1995); Liberty Mut. Ins. Co. v. SCA Serv., Inc., 412 Mass. 330, 331-32 (1992); Continental Cas. Co. v. Gilbane Bldg. Co., 391 Mass. 143, 146-47 (1984); Smartfoods, Inc. v. Northbrook Property & Cos. Co., 35 Mass.App.Ct. 239, 240 (1993).
Well established contract law principles govern the interpretation of an insurance policy. Citation Ins. Co. v. Gomez, 426 Mass. 379, 381 (1998). “If there is no ambiguity, we construe the words of the policy in their usual and ordinary sense.” Id. (internal quotation omitted); Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 121 (1991). Ambiguous insurance contracts are interpreted in favor of the insured. Citation Ins. Co., supra; “However, an ambiguity is not created simply because a controversy exists between parties, each favoring in interpretation contrary to the other.” Lumberman’s Mut. Cas. Co., 419 Mass. 462, 466 (1995). Language is ambiguous only “where the phraseology can support a reasonable difference of opinion as to the meaning of the words employed and the obligations undertaken.” Bank v. Thermo Elemental, Inc., 451 Mass. 638, 648 (2008), quoting President & Fellows of Harvard College v. PECO Energy Co., 57 Mass.App.Ct. 888, 896 (2003).
The court finds that there is no ambiguity in the Eastern E&O policy or the Hartford D&O policy. Exclusion N of the Endurance E&O policy specifically excludes “any claim based upon or arising out of any actual or alleged price-fixing, restraint of trade, monopolization or unfair trade practices including actual or alleged violations of the Sherman Anti-Trust Act, the Clayton Act or any similar provision of or any state, federal or local statutory law or common law anywhere in the world. ’’Claim" as defined in the Endurance policy includes “the services of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of the complaint, motion for judgment or similar proceeding.” (CSMF Ex. O, p. 16.) Exclusions for bodily injury and property damage, fraud, pollution liability, securities claims, patent claims, and most pertinently, antitrust claims, are common in malpractice policies. 4 Thomas & Abramovsky, New Appleman on Insurance Law §25.06[ 1] at 25-27. The Rubloff action specifically includes claims of Sherman Act and Illinois Antitrust Act violations. Exclusion N does not depend on whether actual antitrust violations occurred, but on the allegations in the Rubloff action. Exclusion N does not depend on whether a lawsuit is meritless. The claims in the Rubloff action fall within Exclusion N.
Previously, the court (Wilson, J.) found that the Hartford policy did not provide coverage for Saint’s claims; therefore, regardless of when the notice was given to Hartford, Saint was not harmed, as the claims were not covered.
Saint contends that Eastern breached its written contract by procuring a D&O policy that did not provide coverage for FLSA claims. However, the Policy Comparison Chart specifically noted that coverage for defense of FLSA claims was offered under the Endurance D&O policy, but not under the Hartford D&O policy. Saint was presented with options, but chose a policy that did not cover FLSA claims.
Summary judgment will enter for Eastern on Count I.
II. Breach of Oral Contract: Danahy and Eastern (Count II)
Plaintiff alleges that Danahy and Eastern breached their oral contract with Saint by: (1) failing to procure a policy of insurance which provided Saint with coverage for its core business activities including coverage for the claims made in the Rubloff action; (2) failing to inform Saint that they had bound Saint, without authorization to the description of Saint’s business activities set forth in the Endurance E&O; (3) failing *604 to ensure that Saint’s core business activities identified in the Endurance E&O policy were the same as those identified in the Application; (4) failing to advise Saint to purchase the Endurance D&O policy; (5) failing to timely notify Hartford of the Rubloff action;[3] (6) failing to comply with Hartford’s request for additional information; and (7) failing to provide Saint with competent and expert insurance advice.
Where, as here, parties to an agreement “have reduced the contract to writing, it alone is presumed to express their final conclusions, and all previous and contemporaneous oral discussions or written memo-randa are assumed to have been either rejected or merged in it.” Florimond Realty Co. v. Waye, 268 Mass. 475, 479 (1929). ‘‘When the words of a contract are clear, they must be construed in their usual and ordinary sense, and we do not admit parole evidence to create an ambiguity when the plain language is unambiguous.” General Convention of New Jerusalem in the United States of America, Inc. v. MacKenzie, 449 Mass. 832, 835 (2007) (internal citation omitted). The parole evidence rule bars the introduction of antecedent or contemporaneous oral agreements to contradict, vary or broaden the terms of an integrated, unambiguous writing. Sound Techniques, Inc. v. Hoffman, 50 Mass.App.Ct. 425, 429 (2000). On its face, the contract shows that it is the entire agreement of the parties and comprises all that is necessary to constitute a contract; therefore, it is presumed that the parties have placed the terms of their bargain in this form intending it to be a complete and final statement of their agreement. Gifford v. Gifford, 354 Mass. 247, 249 (1968).
Danahy and Eastern are entitled to summary judgment in their favor on Count II.
III. Breach of Implied-In-Fact Contract: Danahy and Eastern (Count III)
Saint alleges that, even if the written contract did not provide coverage, the court may find that an implied-in-fact contract for coverage existed between the parties. An implied-in-fact contract “comes into being when, notwithstanding the absence of a written agreement or verbal agreement expressing mutual obligations, the conduct or relations of the parties imply the existence of a contract.” Popponesset Beach Ass’n v. Marchillo, 39 Mass.App.Ct. 586, 592 (1996) (emphasis added). Summary judgment must enter for the defendants on Count HI.
IV. Breach of “Contract by Estoppel”: Danahy and Eastern (Count IV)
Saint contends that, even if the specific terms of the insurance policies do not cover the underlying actions, Eastern and Danahy should be held liable based on the principles of estoppel. In essence, Saint’s “Contract by Estoppel” claim is merely a refinement of its claim for breach of contract in Count I. “When a promise is enforceable in whole or in part by virtue of reliance, it is a ‘contract,’ and it is enforceable pursuant to a ‘traditional contract theoiy’ antedating the modern doctrine of consideration.” Rhode Island Hosp. Trust Nat. Bank v. Varadian, 419 Mass. 841, 849 (1995), quoting Loranger Constr. Corp v. E.F. Hauserman Co., 376 Mass. 757, 760-61 (1978). “Therefore, an offer that reasonably induces the other parly to act is enforceable as a contract in the same manner as any other contract to the extent necessary to avoid injustice.” Johnny’s Oil Co. v. Eldayha, 82 Mass.App.Ct. 705, 714 (2012). The parole evidence rule applies here as well because the “Contract by Estoppel” claim is merely a contract claim based on an allegation of detrimental reliance instead of consideration. Even if the parole evidence rule did not apply to the “Contract by Estoppel” claim, the defendants are entitled to summary judgment on Count IV.
“Circumstances that may give rise to an estoppel are (1) a representation intended to induce reliance on the part of a person to whom the representation is made; (2) an act or omission by that person in reasonable reliance on the representation; and (3) detriment as a consequence of the act or omission.” Sullivan v. Chief Justice for Admin. & Mgmt of the Trial Court, 448 Mass. 15, 27-28 (2006), quoting Bongaards v. Millen, 440 Mass. 10, 15 (2003). To recover under a theory of promissory estoppel, Saint must show that they reasonably relied on the representation. Sullivan, 448 Mass. at 28, quoting Turnpike Motors, Inc. v. Newberry Group, Inc., 413 Mass. 119, 125 (1992). “T]he doctrine of estoppel is not applied except when to refuse it would be inequitable.” Sullivan, Id. quoting Cleaveland v. Malden Sav. Bank, 291 Mass. 295, 297 (1935). “It is unreasonable as a matter of law to rely on prior oral representations that are (as a matter fact) specifically contradicted by the terms of a written contract.” Masingill v. EMC Corp., 449 Mass. 532, 541 (2007).
Saint’s reliance was not reasonable. In Kanamaru v. Holyoke Mutual Insurance Company, relied upon by the plaintiff, the Appeals Court found that the plaintiff had demonstrated a sufficient factual dispute as to all elements of the estoppel claim. 72 Mass.App.Ct. 396 (2008). In particular, the court found that a jury could find reliance reasonable where an uninsured person took proactive and diligent efforts to obtain coverage and his name was actually added to the policy as a designated driver. The court noted that two people signed affidavits stating that the insurance agent assured them that they were both covered by the insurance policy although only one of their names appeared on the policy as the “insured.” Furthermore, the court concluded that a jury could find that the plaintiff would not have “reasonably recognized upon reading the policy, which listed him as a designated driver, that the coverage was different from what the agent had described.” Id. at 406. That is hardly the case here. Both Gould, a lawyer and in-house counsel, and Salvucci, were intelligent, educated, experienced businessmen, familiar with insurance issues, yet they failed to read the insurance policies.
*605 The written contract here is unambiguous. It does not include coverage for alleged violations of the antitrust laws. The Policy Comparison Chart made it clear that the Endurance E&O policy did not cover allegations of violations of the antitrust laws. Gould understood from the Chart that the Endurance policy did not cover allegations of anti-trust violations. Saint offered no evidence that it specifically asked for reassurance that allegations of antitrust violations were covered. Saint had no long-term, exclusive relationship with Danahy. Gould and Salvucci failed to read the policies. No fair-minded jury could find Saint’s reliance reasonable. Summary judgment must enter for Eastern and Danahy on Count IV.
V. Breach of Implied Covenant of Good Faith and Fair Dealing: Danahy and Eastern (Count V)
“[E]very contract implies good faith and fair dealing between the parties to it.” Anthony’s Peer Four v. HBC Associates, 411 Mass. 451, 471 (1991). However, this implied covenant may not be “invoked to create rights and duties not otherwise provided for in the existing contractual relationship.” Ayash v. Dana Farber Cancer Inst., 443 Mass. 367, 385 (2005), citing Uno Rests, Inc. v. Boston Kenmore Realty Corp., 441 Mass. 376, 385 (2004). “The scope of the covenant is only as broad as the contract that governs the particular relationship.” Id. Here, the contract between the parties specifically excluded coverage for antitrust claims. Because the insurers were not under a duty to provide coverage to Saint and thus did not breach the insurance contract, it follows that they did not breach the implied covenant of good faith and fair dealing. Summary judgment will enter for Danahy and Eastern on Count V.
VI. Negligence: Danahy and Eastern (Count VI) and Breach of Fiduciary Duty: Danahy and Eastern (Count X)
Plaintiff alleges that Danahy and Eastern owed Saint a duly to exercise due care in the negotiation, formation and placement of insurance on their behalf and both the negligence and breach of fiduciary duty claims rest on this assertion. Saint alleges that Dan-ahy and Eastern were negligent because the Endurance E&O policy did not provide coverage for the Rubloff action, and the Hartford D&O policy did not provide coverage for either the Rubloff action, or the action brought against Saint for violations of FLSA.
However, “[t]here is no general duly of an insurance agent to ensure that the insurance policies procured by him provide coverage that is adequate for the needs of the insured.” Martinonis v. Utica Nat. Ins. Group, 65 Mass.App.Ct. 418, 420 (2006). Insurance brokers do not, in general, have a fiduciary duty to the insured. See Robinson v. Charles A. Flynn Ins. Agency, Inc., 39 Mass.App.Ct. 902, 902-03 (1995). The agent assumes only those duties normally found in an agency relationship. Absent special circumstances, a commercial insured is expected to read its own insurance policies. Sarnifil v. Peerless Insurance Co., 418 Mass. 295, 307 (1994). “Although an insured is entitled to rely on his broker as his agent, an insured cannot abandon all responsibility for ascertaining the terms of the coverage his broker obtained.” Campione v. Wilson, 422 Mass. 185, 196 (1996).
Nonetheless, “[a]n insured can overcome this general rule only by showing that special circumstances existed that gave rise to a duty on the part of the insurer.” Kleykamp v. USAA Cas. Ins. Co., 86 Mass.App.Ct. 1113 (2014), citing Martinonis at 421. “ ‘[S]pecial circumstances of assertion, representation and reliance’ may create a duty of due care.” Baldwin Crane & Equip. Court a Riley & Rielly Ins. Agency, Inc., 44 Mass.App.Ct. 29, 31-32 (1997). Where there exists “special circumstances of assertion, representation and reliance,” such that the client has come to rely on the experience and expertise of the insurance broker, a broker’s duty of care includes at least a duty to inform the client of coverage that a client of reasonable prudence should have, but which the client has not yet obtained. See Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass.App.Ct. 672, 675-77. Whether “special circumstances” exist is generally a question of fact. McCue v. Prudential Ins. Co., 371 Mass. 659, 661 (1976). Special circumstances may include the complexity and comprehensiveness of the particular insurance business issue; whether a continuing relationship existed over a period of years; the frequency of contact between the broker and the insured; and the extent to which the insured, because of the complexity of the policies, had come to rely on the broker. Schwartz v. Travelers Indem. Co., 50 Mass.App.Ct. 672, 680 (2001).
Saint relies on Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass.App.Ct. 672, 676 (1991), and Martinonis v. Utica Nat’l Ins. Group, 65 Mass.App.Ct. 418 (2006). However, those cases are distinguishable from this one. In each of those cases the Appeals Court found “special circumstances.” The plaintiff homeowner in Martinonis had a long-term relationship (28 years) with the insurance agent and bought several different kinds of insurance policies through him over the years. The plaintiff specifically questioned the adequacy of her insurance and the agent assured her of coverage. She had done so in the past and the agent had either reassured her or raised the amount of coverage. The court found special circumstances and reasonable reliance. In Construction Planners, Inc., the plaintiffs dealt exclusively with the same insurance broker, who handled all their extensive insurance needs for their construction business for several years. The broker often renewed insurance policies without consulting with the client. Where the business notified the broker that a project would not be completed by the expiration date of their builders risk policy, and the broker did not inform the client that they would not renew the policy, the court found special circumstances and reasonable reliance.
An enhanced duly may also arise “when the agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for *606 consultation and advice apart from premiums paid by the insured.” Baldwin at 32.
Danahy was not an independent broker who received separate compensation from Saint for his advice: Instead, he was Eastern’s agent and received compensation from them. There was no long-term relationship between the parties. See McCue at 661-62; Construction Planners, Inc. v. Dobax Ins. Agency, Inc., 31 Mass.App.Ct. 672, 674, 676 (1991). Danahy’s promises to provide a “superior” insurance program for Saint and to do “an outstanding job” for all of Saint’s insurance needs are common “puffery” and are not grounds for imposing a greater duty of the care on Danahy and Eastern. However, as noted above, whether “special circumstances” exist is generally a jury question.
Summary judgment as to Counts VI and X is denied.
VIII.Negligent Misrepresentation: Danahy and Eastern (Count VIII)
Saint argues that Danahy and Eastern misrepresented that the Endurance policy provided coverage for alleged antitrust violations and they relied on this misrepresentation in selecting the policy. To establish negligent misrepresentation, the plaintiff must prove that the defendants supplied false information to them without exercising reasonable care or competence in obtaining or communicating the information and that the defendants justifiably relied on that information in selecting the insurance policy, causing them to suffer pecuniary loss. Cummis Ins. Society, Inc. v. BJ’s Wholesale Club, Inc., 455 Mass. 458, 471-72 (2009). This claim is based on oral promises or representations that were allegedly made by Danahy. However, as discussed above, it is not reasonable as a matter of law to rely on oral promises that are “specifically contradicted by the terms of the written contract.” Masingill, 449 Mass. at 541. Thus, if a written contract “was fully negotiated and voluntarily signed, [then] plaintiffs may not raise as fraudulent any prior oral assertion inconsistent with a contract provision that specifically addressed the particular point at issue.” Id., quoting Starr v. Fordham, 420 Mass. 178, 188 (1995). Furthermore, as stated above, any reliance by Saint was not reasonable.
In addition, fraud must be pleaded with particularity. If Saint’s claim is based on Gould’s deposition testimony that he “believed” that Danahy represented (either explicitly or implicitly) that they were covered for antitrust claims, that testimony lacks the specificity required to create any genuine issue of material fact. Cf. Martinonis at 421-22.
Saint cannot proceed on its misrepresentation claim based on allegedly false promises that are not set forth in the complaint. Masingill, 449 Mass. at 545.
IX.G.L.c. 93A Claim: Eastern and Danahy (Count XI)
The defendants next move for summary judgment on Saint’s claim that the defendants engaged in unfair claims settlement practices within the meaning of G.L.c. 93A and 176D. The defendant contends that the record is devoid of any evidence of bad faith in its handling of plaintiffs claim. Various acts or practices of insurers, including failure to settle a claim promptly when liability under the contract has become “reasonably” clear, can constitute an unfair act or practice under chapter 93A. However, an insurance company which in good faith denies a claim of coverage on the basis of a plausible interpretation of its insurance policy cannot ordinarily be said to have committed a violation of G.L.c. 93A. Swabian Realty Co., Inc. v. NGM Ins. Co., 462 Mass. 715, 723 (2012). Eastern had a reasonable and good faith belief that it was not obliged to provide coverage for the plaintiff, therefore summary judgment must enter for the defendant on Count XI.
X.Unjust Enrichment (Count XII): Danahy and Eastern
“A determination that a party would be unjustly enriched ‘require[s], generally, . . . that [the] parly [would] hold property under such circumstances that in equity and good conscience he ought not retain it.’ ” Sutton v. Valois, 66 Mass.App.Ct. 258, 265 (2006) quoting Stevens v. Nagel, 64 Mass.App.Ct. 136, 141 (2005). In evaluating whether a benefit is unjust, the court considers the reasonable expectations of the parties. Community Builders, Inc. v. Indian Motorcycle Assocs., 44 Mass.App.Ct. 537, 560 (1998). “An equitable remedy for unjust enrichment is not available,” however, “to a party with an adequate remedy at law.” Santagate v. Tower, 64 Mass.App.Ct. 324, 329 (2005). “The law will not imply a contract where there is an existing express contract covering the same subject matter.” Zarum v. Brass Mil Materials Corp., 334 Mass. 81, 85 (1956). Saint cannot recover under a theory of unjust enrichment. The rights of the parties are governed by contract.
Summary judgment will enter for the defendants on Count XII.
ORDER
For the foregoing reasons, Defendants’ Eastern and Danahy’s Motion for Summary Judgment is ALLOWED as to Counts I, II, III, IV, V, VIII, XI and XII, and DENIED as to Counts VI and X. Counts I, II, III, IV, V, VIII, XI and XII brought against Eastern and Danahy, are accordingly DISMISSED.

 The court (Wilson, J.), previously allowed Hartford’s Motion to Dismiss [32 Mass. L. Rptr. 8).

 Errors and omissions policies or “malpractice” policies insure firms or individuals against liability from errors and omissions committed in the practice of their professional services. 4 Thomas & Abramovsky, New Appleman on Insurance Law §25.01[2], at 25-9-25-10. These policies typically cover claims based on failing to perform professional services, claims that are themselves often expressly excluded from commercial general liability policies.

 The policy actually required that Saint, not Danahy or Eastern, provide written notice of the claim as soon as practicable, but not later than sixty days. (CSMF Ex. J.)